Petition for Writ of Mandamus Conditionally Granted
and Memorandum Opinion filed September 3, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-09-00579-CV

____________

 

IN RE BOXER PROPERTY MANAGEMENT CORPORATION and 9343
NORTH LOOP, L.P., Relators

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

M E M O R
A N D U M   O P I N I O N








Boxer Property Management Corporation and 9343 North Loop,
L.P. filed a petition for writ of mandamus asking this court to compel the
presiding judge of the 133rd District Court of Harris County to vacate a June
16, 2009 order compelling the deposition of relators= corporate representative.  Relators
contend the deposition will invade the attorney work product privilege
regarding their response to requests for production propounded by real parties
in interest, Lynell Wells, individually, as the legal representative of the
estate of her deceased husband, Marvin Wells, and as next friend of her minor
child, Adrian D. Wells; Marvin Wells d/b/a M & E Transportation; Marvin G.
Wells; and Shameka Wells (the AWells plaintiffs@).  We conditionally grant the writ. 

                                                               Background

On March 28, 2007, Misty Ann Weaver set fire to the fifth
floor office leased by her employer in the atrium-style building located at
9343 North Loop in Houston.[1]  9343 North
Loop, L.P. owns the building and Boxer Property Management Corporation (ABoxer@) manages it.  Marvin Wells, Jeanette
Hargrove, and Shana Ellis died as a result of the fire, and their family
members brought premises-liability claims against 9343 North Loop, L.P. and
Boxer.  

On September 5, 2008, the Wells plaintiffs served relators
with their eighth set of combined discovery, including requests for production,
regarding other atrium-style buildings currently or previously managed by
Boxer.  The discovery focused on roof vents and roof hatches.  On October 6,
2008, relators objected that the requests for production were overly broad
because they sought information about buildings other than the 9343 North Loop
building.  Relators asserted that such information was irrelevant and not
reasonably calculated to lead to the discovery of admissible evidence.  

The Wells plaintiffs filed a motion to compel responses to
the disputed discovery, which was heard by the Honorable Lamar McCorkle on
December 15, 2008.  Judge McCorkle signed an order on December 22, 2008,
directing relators to provide full and complete responses to the eighth set of
combined discovery requests.  On March 20, 2009, relators responded to the
requests for production; they asserted that no documents regarding roof vents
and roof hatches exist other than those previously produced for the 9343 North
Loop building.  








On April 13, 2009, the Wells plaintiffs served relators with
a deposition notice directed to relators= corporate representative with
knowledge, among other things, of who searched for documents related to roof
vents and roof hatches in other atrium-style buildings; which buildings were
searched; and the manner in which the document search was conducted.  Relators 
moved to quash the notice of deposition and requested a protective order on
April 16, 2009.  Among other grounds, relators objected that the deposition
notice was an Aimproper inquiry into work product and attorney-client matters.@  

On May 9, 2009, the Wells plaintiffs filed a motion to compel
the deposition of relators= corporate representative and asserted that relators had
refused to respond to outstanding discovery.  Relators responded on May 14,
2009 that they had Acompletely complied with their obligations in responding to
these requests by performing a diligent record search for responsive
documents.  After defense counsel=s investigation, no documents were
identified that are responsive to the requests.@  Relators also reasserted arguments
raised in their motion to quash.

At a hearing before Judge Jaclanel McFarland[2]
on June 2, 2009, relators= counsel argued that (1) his clients had conducted an Aexhaustive search@ for responsive documents; and (2) it
was inappropriate to inquire into what the lawyers did or what others did at
the lawyers= direction in response to the discovery.  








Counsel for the Wells plaintiffs asserted that relators are Ahiding@ documents; therefore, the Wells
plaintiffs want a witness to state under oath what was done to search for the
responsive documents.  The trial court directed the Wells plaintiffs to submit
proposed questions for the trial court=s review, after which the trial court
would decide whether to allow a limited deposition.  On June 10, 2009, the
Wells plaintiffs submitted thirteen proposed questions and one document
production request.  

Another hearing was held on June 16, 2009, at which relators
stated that they originally had objected to discovery on other atrium-style
buildings, and after their objections were overruled by Judge McCorkle=s December 22, 2008 order, relators
searched for these records.  Relators stated that they had complied with their
obligations and responded to the discovery.  Relators= counsel further stated that the
deponent necessarily would be their general counsel because he Aled@ relators= efforts in responding to discovery. 
Counsel for the Wells plaintiffs asserted that a deposition would establish
relators= lack of diligence in searching for
the requested documents.  

The trial court approved twelve of the thirteen proposed
questions and the request for document production; granted the motion to compel
the deposition of relators= corporate representative; and signed an order compelling
relators to produce the documents and witness to answer the approved questions
as follows:[3] 

1.         State your full name.

2.         Referring to attached Exhibit
1,[4]
please describe what you understand this court order to compel you to supply
plaintiffs?

3.         Referring to attached Exhibit
1, please state the criteria and understanding you utilized to identify the Aother buildings@
you were to obtain information on?

4.         Referring to attached Exhibit
1, please identify the physical address of each Aother building@ you researched to provide responsive information to
the attached order.








5.         Where are the records kept?

6.         What categories of records
exist for each building?

7.         What did you do to look for
records?

8.         Please identify the person(s)
who actually searched for any and all responsive documents to comply with the
court order attached as Exhibit 1.

9.         Referring to attached Exhibit
2, please identify which of the buildings identified in that Exhibit that you
did not search for responsive documents in responding to Exhibit 1.

10.       Referring to Exhibit 2, please
identify each of the buildings identified in that Exhibit that you did search
for responsive documents in responding to Exhibit 1.

11.       Please identify all other
buildings in Houston, Harris County, Texas that were managed by Boxer Property
Management on March 28, 2007. [sic] and state which of these you made a search
of to comply with attached Exhibit 1.

12.       Please provide all documents
relating to the inspection, condition and/or repairs made to any fire alarms,
fire warning, roof vents, [and] smoke vents in any of the properties identified
in Exhibit 2 hereto at any time between 2003 and [March 28,] 2007.[5]

13.       Which
of the properties identified in the Exhibit identified in Exhibit 2 are you not
providing documents on in response to Exhibit 1 and why?

The trial court further ordered that the deposition be taken
at the courthouse.  On June 30, 2009, the trial court denied relators= motion to stay the June 16, 2009
order while they sought mandamus relief.  This court granted a stay and now
addresses relators= request for mandamus relief on the merits. 

 








                                          Mandamus Standard

To obtain relief by a writ of mandamus, a relator must show
that (1) the trial court clearly abused its discretion; and (2) the relator has
no adequate remedy by appeal.  In re Team Rocket, L.P., 256 S.W.3d 257,
259 (Tex. 2008) (orig. proceeding).  A trial court clearly abuses its
discretion if it reaches a decision so arbitrary and unreasonable as to amount
to a clear and prejudicial error of law, or if it clearly fails to correctly
analyze or apply the law.  In re Cerberus Capital Mgmt., L.P., 164
S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); Walker v.
Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).  In determining
whether an appeal is an adequate remedy, we consider whether the benefits of
mandamus review outweigh the detriments.  In re BP Prods. N. Am., Inc.,
244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding).  When the appellate court
cannot remedy the trial court=s discovery error, an inadequate remedy does not exist.  In
re Dana Corp., 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding) (per
curiam); In re Kuntz, 124 S.W.3d 179, 181 (Tex. 2003).  Mandamus is
appropriate when discovery exceeds permissible bounds.  In re Weekley Homes,
L.P., No. 08-0836, 2009 WL 2666774, at *8 (Tex. Aug. 28, 2009).

                                                                    Analysis

Relators contend that the court-approved deposition questions
serve no purpose other than to investigate in-house counsel=s search for documents in response to
requests for production.  Relators assert that the information at issueCthe Awho, what, when, why and how@ of  relators= search for responsive documentsCconstitutes core attorney
work-product. 

A.        Attorney
Work Product is Privileged








Discovery generally is permitted regarding any unprivileged
information relevant to the subject of a lawsuit.  Tex. R. Civ. P. 192.3(a). 
The scope of discovery is a matter of trial court discretion.  In re CSX
Corp., 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam). 
However, a trial court=s ruling that requires production beyond what the procedural
rules permit is an abuse of that discretion.  In re Dana Corp., 138
S.W.3d at 301.  Depositions may not be used to conduct a fishing expedition.  See
K Mart Corp. v. Sanderson, 937 S.W.2d 429, 431 (Tex. 1996) (orig.
proceeding) (per curiam) (citing Loftin v. Martin, 776 S.W.2d 145, 148
(Tex. 1989) (orig. proceeding)).  

An assertion that material or information is work product is
an assertion of privilege.  Tex. R. Civ. P. 192.5(d).  The party resisting
discovery bears the burden of establishing the applicability of an asserted
privilege.  In re ExxonMobil Corp., 97 S.W.3d 353, 357 (Tex. App.CHouston [14th Dist.] 2003, orig.
proceeding) (citing Huie v. DeShazo, 922 S.W.2d 920, 926 (Tex. 1996)
(orig. proceeding)).  The work-product privilege is governed by Rule 192.5. 
Tex. R. Civ. P. 192.5.  Rule 192.5(a) covers:

(1) material prepared or mental
impressions developed in anticipation of litigation or for trial by or for a
party or a party=s representatives, including the party=s attorneys, consultants, sureties, indemnitors,
insurers, employees, or agents; or

(2) a
communication made in anticipation of litigation or for trial between a party
and the party=s representatives or among a party=s representatives, including the
party=s attorneys, consultants, sureties,
indemnitors, insurers, employees, or agents.  

Id. 








The Texas Rules of Civil Procedure protect work product from
discovery and distinguish between core and non-core work product.  Tex. R. Civ.
P. 192.5(b).  Core work product is defined as Athe work product of an attorney or an
attorney=s representative that contains the
attorney=s or the attorney=s representative=s mental impressions, opinions,
conclusions, or legal theories.@  Tex. R. Civ. P. 192.5(b)(1).  Core work product is not
discoverable.  Id.  Any other work product is discoverable only upon a
showing that the party seeking discovery has substantial need of the materials
in the preparation of the party=s case, and that the party is unable without undue hardship
to obtain the substantial equivalent of the material by other means.  Tex. R.
Civ. P. 192.5(b)(2). 

B.        The
Discovery at Issue Invades the Work-Product Privilege

Relators argue that the trial court=s order compelling the deposition of
their corporate representative necessarily requires that the deponent will be
their general counsel, who led relators= internal discovery response efforts,
and therefore impermissibly invades the attorney work-product privilege. 
Relators rely on In re Exxon Corporation, 208 S.W.3d 70 (Tex. App.CBeaumont 2006, orig. proceeding), to
support this contention.  The Wells plaintiffs assert that Exxon is
inapplicable because the June 16 order compels the deposition of a Acorporate representative,@ not in-house counsel.

Exxon addressed whether the trial court may compel a party to
present a deponent to testify regarding efforts to locate documents sought in
requests for production.  Id. at 71.  The plaintiffs alleged that two
contract workers died of cancer attributable to benzene exposure while working
on Exxon=s premises.  Id.  With regard
to documents previously requested, the plaintiffs sought information via
deposition about the existence of such documents; electronic creation,
duplication and storage; document retention and destruction policies; location;
organization, indexing, and filing; method of search; completeness; and
authenticity.  Id. at 72.  Plaintiffs deposed the records custodian of
the industrial-hygiene room, which contained records of any hazards to
employees; the deponent could not say that no other departments possessed
responsive documents.  Id.  Plaintiffs then deposed an industrial
hygienist, who also could not say definitely that the plaintiffs possessed all
responsive documents.  Id. at 72B73.  








Plaintiffs then moved to compel compliance with the trial
court=s orders regarding discovery and
requested sanctions.  Id. at 73.  The plaintiffs contended that Exxon
had produced witnesses who had no knowledge of the method Exxon used to search
for responsive documents.  Id.  Despite Exxon=s objections that the plaintiffs knew
its in-house and outside counsel had compiled responsive documents, the trial
court ordered Exxon to produce a deponent.  Id. at 73B74.  

Exxon filed a petition for writ of mandamus and argued that
requiring a corporate representative to testify about the search for responsive
documents necessarily invaded the attorney-client and work-product privileges. 
Exxon, 208 S.W.3d at 74.  The plaintiffs responded that information
about whether Exxon had performed a diligent search could not encompass work
product because the documents were not created in preparation for litigation.  Id. 
Rejecting the plaintiffs= arguments, the court of appeals explained:

[T]he plaintiffs seek to
depose an Exxon representative for the purpose of inquiring specifically into
the process by which Exxon=s representative responded to the requests for production. 
This subject necessarily and almost exclusively concerns the Amental impressions developed in
anticipation of litigation or for trial by or for a party or a party=s representatives@ and consists of the Aattorney=s representative=s mental impressions, opinions,
conclusions, or legal theories@ subject to protection as work product and core work
product.  

Id. at 75
(quoting Tex. R. Civ. P. 192.5(a)(1), (b)(1)).  The court further explained
that the anticipated deponent likely would be one of Exxon=s attorneys.  Id. at 76. 
Moreover, the plaintiffs had not produced any concrete evidence of discovery
abuse in that case justifying an investigation into Exxon=s discovery compliance.  Id.
at 71.  Therefore, the trial court abused its discretion by compelling Exxon to
present a deponent responsive to the deposition notice.  Id. at 77.  








This case is similar to Exxon because the sole purpose
of this deposition is to explore the methods used in searching for documents
requested in discovery.  This is demonstrated by the court-approved deposition
questions and by the explanation that counsel for the Wells plaintiffs gave
regarding the purpose and need for the deposition.  At the June 2, 2009
hearing, the Wells plaintiffs= counsel argued to the trial court as follows:  

[Relators are] saying they
have no records indicating that they took any maintenance procedures or
maintenance care of theseCof the fire systems in these other buildings. That just does
not smack to be truthful, and that=s why we are asking permission to
take the deposition of someone under oath who can tell us what they did and
where the documents were searched for.  

Furthermore, at the June 16, 2009 hearing, the Wells plaintiffs= counsel stated:

So now we=ve asked for a deposition so someone
can face the pains and penalties of perjury to say that no such documents
exist.

Relators also told the trial court that the deponent necessarily would be
their general counsel because Aif we=re going to delve into what we do to answer discovery, that=s the person who led it up, because
he=s the contact of the client for
responding to discovery.@  At the June 30 hearing, when the trial court expressed its
doubts that Athe attorney went to all of the buildings and all the management
office[s] and physically looked through the documents,@ relators responded that A[h]e did and this is not a big company. 
This isn=t Exxon.  This is a small operation.@[6]  








The Wells plaintiffs attempt to distinguish Exxon on
grounds that the record in  that case provided no indication of discovery abuse
in connection with the requests for production.  The Wells plaintiffs argue that
(1) Exxon produced 25,000 pages of documents and made its 100,000-document
industrial hygiene file room available to the plaintiffs; and (2) the Exxon
plaintiffs had taken the depositions of two non-attorney employees familiar
with the records.  But there is no evidence of discovery abuse by relators on
this record.  There are only allegations.  This is an insufficient basis upon
which to justify the discovery being sought.  Cf. In re Weekley Homes, L.P.,
2009 WL 2666774, at *11 (Aconclusory statements that the deleted emails it seeks >must exist= . . . [are] not enough to justify
the highly intrusive method of discovery the trial court ordered@).

The Wells plaintiffs further attempt to distinguish Exxon
because the plaintiffs there specifically asked the court to compel the
deposition of an Exxon attorney, while no such request has been made here. 
This attempt fails because the plaintiffs in Exxon requested a corporate
representative responsive to their deposition notice even though they knew that
Exxon=s attorneys had compiled the document
in response to the requests for production.  Similar circumstances exist here. 
The Wells plaintiffs assert that they would accept relators= custodian of records as the
deponent, but it is undisputed on this record that the person who oversaw relators= responses to the Wells plaintiffs= requests for production is relators= general counsel.  

We conclude that the analysis in Exxon applies with
equal force here.  On this record, it is beyond dispute that the requested
deposition will explore attorney work product in connection with relators= efforts to respond to the Wells
plaintiffs= discovery requests.  The Wells plaintiffs contend that the deposition is
necessary because relators are Ahiding@ documents, and argue that a deposition will show Athat someone has not done a diligent
search for [the documents].@  The assertion of discovery abuse rests entirely on relators= representation that responsive
documents do not exist.  Under these circumstances, a deposition of relators= general counsel aimed at exploring
how this attorney responded to discovery constitutes an impermissible fishing
expedition.  








The circumstances here point even more strongly in favor of
mandamus relief than those at issue in Exxon.  In Exxon, there
initially was a non-privileged purpose for the requested deposition: exploring
the nature and organization of the produced documents in the file room.  No
such purpose exists in this case.  The only purpose here is to police relators= discovery compliance.  Bare
assertions that an opponent is hiding documents do not justify deposing
in-house counsel at the courthouse about whether a diligent document search
really was conducted.  

C.        Mandamus
Is Not Premature

The Wells plaintiffs argue that, even if the trial court=s order requires an attorney=s deposition, mandamus relief is
inappropriate at this time.  The Wells plaintiffs posit that, to assert a
privilege, the witness must attend the deposition, the witness must be sworn,
questions must be asked, and if the answer to a particular question requires
disclosure of privileged information, then counsel may advise the witness not
to answer and present a privilege objection to the trial court.  See
Tex. R. Civ. P. 199.5, 199.6.  The Wells plaintiffs claim that mandamus relief
therefore is premature because these events have not yet occurred in this case.[7] 









The Wells plaintiffs cite several cases holding that the
trial court may not quash a deposition based solely on the possibility that a
party may assert a privilege; instead, the party may assert a privilege at the
time a specific question is asked at deposition that invades the privilege. 
However, a review of these cases reflects that the discovery sought information
on facts related to the claims or defenses in the underlying litigation;
therefore, quashing the entire deposition based on the possible assertion of a
privilege would constitute an abuse of discretion.[8] 
Here, in contrast, relators= general counsel is not merely a fact witness whom the Wells
plaintiffs desire to question about underlying claims or defenses.[9] 
The precise questions that would be posed at the deposition already have been
framed and approved by the trial court; thus, the examination of matters
related to attorney work-product is not a mere possibility.  Instead, the
pre-approved questions solely concern attorney work product involving the
general counsel=s efforts to respond to the Wells plaintiffs= requests for production of documents
related to other buildings.  








The Wells plaintiffs also posit that mandamus is premature
because A[e]ven in this situation where the
court has approved a list of topics which may form the basis for questions
which may be asked the deposition, no question has been asked and counsel may
or may not choose to examine the witness relating to all these matters.@  This argument fails because the
questions submitted for approval by the trial court are not merely Atopics@ that the Wells plaintiffs may
explore at deposition.  Instead, they are the specific questions to be asked at
the deposition, which the trial court expressly instructed counsel for the
Wells plaintiffs to submit for its review and approval.  At the June 2, 2009
hearing, the trial court stated to the Wells plaintiffs= counsel:  AI mean, I want you to write out
actually a question, not just, you know, you want them to produce somebody with
knowledge. . . . I want you to limit it, make it as poignant [sic] as you can,
and I want the exact questions you are going to ask.@  

Given this procedural posture, granting mandamus relief is
neither premature nor advisory.  The trial court instructed counsel for the
Wells plaintiffs to submit the specific depositions questions he intended to
ask.  Relators objected to the proposed questions based on privilege.[10] 
The trial court overruled relators= objections and approved twelve of
the thirteen questions proposed by the Wells plaintiffs.  Therefore, no
speculation is required to know what questions will be asked and what
objections will be asserted.  

The Wells plaintiffs further assert that relators must
produce a witness for deposition, who must answer any questions asked in the
deposition relating to non-privileged matters.  In the event relators believe a
specific question asked at the deposition intrudes upon a privileged matter,
relators may object at the time of the deposition.  See Tex. R. Civ. P.
199.5, 199.6.  








Relators assert the parties= and the trial court=s time would be wasted by waiting to
seek mandamus relief until after (1) relators have produced the witness, (2)
the Wells plaintiffs have asked the court-approved questions, (3) relators= counsel has advised the witness not
to answer based on a privilege, (4) relators have presented the privilege
objection to the trial court, and (5) the trial court has overruled relators= objection for a second time.  We
agree.  Rules 199.5 and 199.6 do not require another round of privilege
objections and rulings based on a predetermined set of questions directed to
in-house counsel.  The particular procedure utilized here required relators to
object prior to the deposition.  They did so, and the trial court abused its
discretion in overruling their objections.  Accordingly, we conclude that
granting mandamus relief in this case is not premature.  

D.        Relators
Told the Trial Court They Conducted an AExhaustive@ Search








The Wells plaintiffs argue that relators= response to their requests for
productionCthat no responsive documents existedCwas inadequate because it did not
include the language Aafter a diligent search@ as required by Rule 196.2(b)(4). 
The Wells plaintiffs failed to raise this complaint in the trial court; but
even if they had, it is not dispositive here because relators seek protection
from the order compelling the deposition, not the requests for production.[11] 
In any event, relators repeatedly told the trial court that they had conducted Aan exhaustive search@ and a Areasonable search@ for documents responsive the
requests for production.[12]  These
representations to opposing counsel and the trial court are sufficient.  

E.        Matters
Related to Other Buildings

The Wells plaintiffs next assert that they are permitted
discovery on matters relating to other buildings managed by Boxer because
relators= expert claimed that the 9343 North
Loop building was managed, maintained, and operated in accordance with industry
standards.  See Tex. R. Civ. P. 192.3.  This contention does not address
the issue presented to us in this mandamus, and in any event, relators have
represented that responsive documents do not exist.

F.        No
Adequate Remedy by Appeal

When the appellate court cannot remedy the trial court=s discovery error, an adequate remedy
does not exist.  In re Dana Corp., 138 S.W.3d at 301; In re Kuntz,
124 S.W.3d at 181.  If relators are compelled to disclose their core attorney
work product, such error cannot be remedied on appeal.  See In re E.I.
DuPont de Nemours & Co., 136 S.W.3d 218, 223 (Tex. 2004) (orig.
proceeding) (per curiam) (mandamus is proper when the trial court erroneously
orders the disclosure of privileged information because the trial court=s error cannot be corrected on
appeal).  








                                                                Conclusion

Relators have established that the trial court abused its
discretion by compelling the deposition of relators= corporate representative, its
general counsel, to respond the twelve questions and one request for production
set forth in the June 16, 2009 order.  Relators have no adequate remedy by
appeal.  Accordingly, we conditionally grant the petition for a writ of
mandamus and direct the trial court to vacate its June 16, 2009 order.  The
writ will issue only if the trial court fails to act in accordance with this
opinion.  We lift the stay issued on July 2, 2009. 

 

 

 

 

/s/        William J. Boyce

Justice

 

 

Panel consists of Justices
Anderson, Guzman, and Boyce.  









[1]  Weaver pleaded guilty to felony aggravated arson and
three counts of felony murder in connection with the fire.  





[2]  Judge Jaclanel McFarland became the presiding judge
of the 133rd District Court on January 1, 2009.  





[3]  The Wells plaintiffs also submitted another question
asking A[w]hich buildings have had fire panels replaced,@ but the trial court did not approve this question.  





[4]  Exhibit 1 is the December 22, 2008 order directing
relators to provide full and complete responses to the eighth set of combined
discovery requests.  Exhibit 2 lists other buildings managed by Boxer.  





[5]  The proposed question originally included a range of
dates between 2003 and June 1, 2007; the trial court changed the ending date to
March 28, 2007, the date of the fire.  





[6]  At the June 30 hearing, relators further argued to
the trial court regarding the person with the most knowledge about relators= response to the Wells plaintiffs= requests for production: 

 

In this case, I think we=ve shown that this person is John Rentz, our general counsel.  If it=s not the outside lawyers, what could be even probably
more dangerous.  So it=s a noticed [sic] yes for a corporate rep but that
corporate rep is necessarily, John Rentz, the general counsel because they=ve asked for the person with the most knowledge.  He
did the works.  He=s the person with the most knowledge.





[7]  See Borden, Inc. v. Valdez, 773 S.W.2d 718,
720 (Tex. App.CCorpus Christi 1989, orig. proceeding) (AThe problem, however, is that no questions have been
asked and we may only speculate as to the substance of what would be revealed
should King be deposed.@); Hilliard v. Heard, 666 S.W.2d 584, 585 (Tex.
App.CHouston [1st Dist.] 1984, orig. proceeding) (AWhether or not such claims [of privilege] will be
asserted is conjectural until they are made of record, and the mere prospect
that such privilege or immunity will be urged on deposition does not justify
prior restraint on the taking of a deposition.@).  





[8] See, e.g., In re Mason & Co. Prop. Mgmt.,
172 S.W.3d 308, 314 (Tex. App.CCorpus Christi
1989, orig. proceeding) (holding trial court abused discretion by quashing
deposition of plaintiff=s and co-defendants=
attorneys to discover communications between attorneys because such discovery
was relevant to claims and defenses at issue, and parties could follow
procedures for asserting privilege at deposition); Borden, Inc., 773
S.W.2d at 720B21 (denying mandamus relief from trial court=s denial of motion to quash deposition of defendant=s attorney, who may have been aware of relevant facts
underlying subject matter of lawsuit, because no questions had been asked and
some topics might not be encompassed by attorney-client privilege); Hilliard,
666 S.W.2d at 585 (holding trial court abused discretion by quashing deposition
of defendant=s attorney, who had injected himself into lawsuit by
filing controverting affidavit); In re Check, No. 04-07-00801-CV, 2007
WL 4320709, at *1 (Tex. App.CSan Antonio
Dec. 12, 2007, orig. proceeding [mand. denied]) (mem. op.) (denying mandamus
relief from denial of motion to quash deposition of defendant=s attorney because his involvement in events
underlying litigation made him fact witness, and nothing precluded asserting
privilege to particular questions); In re Christus Health Se. Tex., No.
09-04-186-CV, 2004 WL 1047382, at *1 (Tex. App.CBeaumont May 6, 2004, orig. proceeding) (mem. op.) (denying mandamus
relief from order requiring deposition of attorney because relators had not
shown that attorney-client privilege would be violated if attorney was deposed
about what facts she knew indicating decedent had physically abused wife).  





[9]  Boxer=s
general counsel already has been deposed in connection with other
non-privileged issues related to the merits of this case.





[10]  At the June 16, 2009 hearing, relators argued that
the deposition questions are improper Adiscovery
on discovery.@  In their motion to stay the June 16, 2009 order,
relators objected to the deposition questions: 

 

The Boxer Defendants strongly believe that Plaintiffs= proposed deposition questions seek information
protected by the work[-]product privilege.  The Boxer Defendants= general counsel and outside attorneys were the
persons who drafted the responses to Plaintiffs= discovery requests and conducted the search for responsive documents. 


 

At the June 30, 2009 hearing, relators told the trial
court: 

 

[W]e just object to those questions and, you know, if
I was going to present a witness who knew anything, the only way to get that
knowledge in that witness=s brain if it=s
not John Rentz is for John Rentz to tell[,] then we have attorney-client and
work product.  





[11]  In their March 20, 2009 response to the requests for
production, relators stated, ASubject to and
without waiving Defendants= objections,
none other than documents previously produced by Defendants in this matter for
9343 North Loop East, the building that is the subject of this lawsuit.@  





[12]  At the June 2, 2009 hearing, relators= counsel stated: 

 

I will tell you that my client did an exhaustive
search in the places that were reasonable, in looking at the records.  They
went to each of the buildings and got the records that were at the buildings
that they had access to, and all of those documents were reviewed.  They=ve reviewed their accounting records for entries that
were appropriate and followed those runs.

 

Furthermore, at the June 30
hearing, relators=s counsel stated that AWe made the reasonable search that you=re required to make and we responded we have none.@  Also, in their response to the motion to compel,
relators stated, AAfter defense counsel=s investigation, no documents were identified that are responsive to
the requests.@