

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00337-CV

———————————————————

IN RE STATE FARM LLOYDS, Relator

Original Proceeding
17th District Court of Tarrant County, Texas
Trial Court No. 017-315960-20

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

State Farm Lloyds filed a petition for writ of mandamus seeking to vacate parts of the trial court's order requiring State Farm's designated corporate representative to answer specific deposition questions on or before October 27, 2021. Because we hold that some of the questions are irrelevant to the litigation and therefore not within the proper scope of discovery, we conditionally grant partial relief.

## Background

Goldie Browning sued her home insurer, State Farm, and its adjuster, Roberto Alvarado, after Alvarado denied a water-damage claim she made according to a specific water-damage endorsement that she had purchased. Based on her allegation that State Farm "systematically denies plumbing[-]leak claims at the initial valuation stage knowing that the initial valuations are inaccurate, unreliable, and biased toward generating estimates far below the actual cash value or replacement cost and anticipating that claimants will not bother disputing the low offer," Browning asserted claims for breach of contract, unfair or deceptive acts or trade practices, breach of the common-law duty of good faith and fair dealing, breach of the Prompt Payment of Claims Act, breach of express or implied warranty, and fraud. Browning also alleged that Alvarado had not reasonably investigated her claim.

Browning initially served a notice to depose a State Farm corporate representative on August 31, 2021. State Farm moved to quash the deposition because its counsel had a jury trial scheduled that day in a different county. *See* Tex.

2

R. Civ. P. 199.4. State Farm later filed a lengthy amended and supplemental motion, in which it challenged most of the deposition topics on which Browning sought to question the designated corporate representative as overly broad and irrelevant, among other things. But State Farm said that it would be "willing to produce, at an appropriate time, a company representative to testify concerning [its] formal written policies and procedures applicable to the claim at issue in this lawsuit, and, to the extent not duplicative of the adjuster's deposition testimony, as to the facts underlying the handling of the claim."

Browning deposed Alvarado before the parties resolved the motion to quash the corporate representative's deposition. At the later motion-to-quash hearing, State Farm agreed to several of the deposition topics outlined in Browning's notice, either as is or with amended language. After amending some of the designated questions according to the parties' agreements, the trial court denied State Farm's motion to quash. Its order requires State Farm to designate, on or before October 27, 2021, one or more corporate representatives to answer the following questions about which State Farm now complains:

> 6. Cycle times or metrics for investigating, adjusting, and paying first-party property claims in Texas in force at the time of Plaintiff's claim that applied to the handling of Plaintiff's insurance claim;
>
> 7. Guidelines, manuals, and procedures, that serve as criteria for underwriting property insurance in Texas or determining whether Plaintiff's property was insurable;
>
> . . . .

3

9. Duties, if any, owed by State Farm Lloyds to an insured in a first-party property claim;

10. Incentives, bonuses, or compensation structure for first-party property claims adjusters involved in the handling of Plaintiff's insurance claim, but in no event does State Farm Lloyds have to divulge or provide information regarding the actual amounts paid to any of the adjusters or supervisors involved in the handling of Plaintiff's insurance claim;

. . . .

12. Advertisements, marketing or promotional items, published, used and/or distributed by State Farm Lloyds related to plumbing leak claims in Texas within the last 5 years;

13. The performance, review, and oversight of first-party property claims adjusters handling Plaintiff's claims; [and]

14. Existence and location of electronically stored information related to Plaintiff's claim. Specifically, internal e-mails or messaging systems used by State Farm Lloyds to communicate with adjusters or vendors, Xactimate, or the claims management system and how to extract that information for use in litigation.

Along with its mandamus petition in this court, State Farm filed a motion for temporary relief. We requested a response to the petition from Browning but left the motion for temporary relief pending. We now conditionally grant part of the relief requested in State Farm's mandamus petition and deny the motion for temporary relief as moot.

**Standard of Review and Applicable Law**

This court may grant mandamus relief from a discovery order only when (1) the trial court's decision is so arbitrary and unreasonable that it amounts to "a clear

4

and prejudicial error of law" and (2) the relator has no adequate remedy by appeal. *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding) (quoting *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding)).

In determining whether the trial court abused its discretion, we may not substitute our judgment for the trial court's determination of factual or other discretionary matters. *Id.* But because a trial court has no discretion in determining what the law is or applying the law to even unsettled facts, we review its decisions on questions of law and application-of-law-to-facts questions much less deferentially. *Id.* A trial court abuses its discretion by clearly failing to correctly analyze or apply the law. *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding).

Even when a trial court abuses its discretion in making a discovery ruling, we will intervene only if the relator has an inadequate remedy by appeal. *In re Prudential Ins. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). Appeal is inadequate when a discovery order compels production "beyond the rules of [civil] procedure." *In re Nat'l Lloyds Ins.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (quoting *In re Nat'l Lloyds Ins.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding)).

The scope of discovery is generally within the trial court's discretion so long as a discovery order does not exceed what the rules of civil procedure permit. *See* Tex. R. Civ. P. 192.4; *State Farm Lloyds*, 520 S.W.3d at 604; *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). To be discoverable, evidence must be relevant and nonprivileged. *See* Tex. R. Civ. P. 192.3(a); *In re Nat'l Lloyds Ins.*, 532

5

S.W.3d 794, 808 (Tex. 2017) (orig. proceeding). It need not be admissible but must be reasonably calculated to lead to the discovery of admissible evidence. *See* Tex. R. Civ. P. 192.3(a); *Nat'l Lloyds*, 532 S.W.3d at 808. Thus, although the permitted scope of discovery is generally broad, a discovery request "must show a reasonable expectation of obtaining information that will aid the dispute's resolution." *Nat'l Lloyds*, 532 S.W.3d at 808 (quoting *CSX*, 124 S.W.3d at 152); *In re CAR Fin. Servs., Inc.*, No. 02-20-00157-CV, 2020 WL 4213839, at *5 (Tex. App.—Fort Worth July 23, 2020, orig. proceeding) (mem. op.) ("A discovery request is not overly broad if it is reasonably tailored to include only relevant matters." (citing *Nat'l Lloyds*, 507 S.W.3d at 223–24)).

Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. Tex. R. Evid. 401. We evaluate the relevancy of discovery on a case-by-case basis by considering, among other things, the claims as pleaded and the instrumentality of the alleged injury. *See In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 146 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding).

## Analysis

In determining the relevance of the questions Browning seeks to ask the corporate representative, we examine the allegations in Browning's petition. Browning alleged that State Farm (1) in general, systematically denies plumbing-leak claims outright, (2) specifically as to her policy, took a premium on an insurable value

6

it never meant to pay, (3) marketed services with no intent to sell them as advertised because it never intended to pay for ingress and egress repairs covered by the water-damage endorsement sold to Browning, (4) pretextually denied or undervalued Browning's claim, (5) misrepresented the cause and extent of damage to Browning's home, and (6) duped Browning into purchasing her policy, specifically the water-damage endorsement. She also claimed that Alvarado failed to reasonably investigate her claim. These claims fall into three broad categories: that Alvarado—and therefore State Farm—failed to conduct a reasonable investigation before improperly denying Browning's claim, *see* Tex. Ins. Code Ann. § 541.060(a)(7); that Alvarado never intended to pay her claim according to State Farm's normal business practice; and that State Farm misrepresented to Browning individually—and to other customers via false advertising[1]—that it would pay claims pursuant to the type of water-damage endorsement Browning had purchased, knowing that it never intended to pay those claims. The gist of Browning's alleged injury is that State Farm failed to pay a covered claim.

Accordingly, we consider the proposed question topics against the foregoing backdrop.

---

[1]As to her false advertising claim, Browning did not allege that she relied on any false advertising by State Farm in deciding to purchase her policy or additional water-damage endorsement.

**Underwriting Guidelines, Manuals, and Procedures (Question 7)**

Browning contends that the request to question the corporate representative about "[g]uidelines, manuals, and procedures, that serve as criteria for underwriting property insurance in Texas or determining whether Plaintiff's property was insurable," is relevant because she has alleged that "during the underwriting and binding of coverage of [her] insurance policy, State Farm failed to state a material fact necessary to make other statements made not misleading, . . . specifically the application of the water damage endorsement that she paid extra money for." According to Browning, "State Farm duped [her] into purchasing its policy but failed to disclose that it will never pay claims absent a lawsuit."

Although the materials that served as criteria for underwriting Browning's policy are relevant to the suit, particularly the allegation that State Farm made misrepresentations to Browning in the underwriting of her policy,[2] the remainder of the request is overly broad, as urged by State Farm. Browning fails to explain how her claims entitle her to the broad range of materials included in "[g]uidelines, manuals, and procedures, that serve as criteria for underwriting property insurance in Texas." Underwriting requirements for different types of policies and insureds throughout the

---

[2]*Cf. Tri Invs., Inc. v. United Fire & Cas. Co.*, No. 5:18-CV-116, 2019 WL 3308512, at *2 (S.D. Tex. May 24, 2019) ("The Court finds that information related to underwriting is not relevant to the claims and defenses in this lawsuit, except to the extent that Defendant received or conducted any pre-loss inspection or evaluation of the condition of properties, which the Court finds is relevant and proportional to the needs of the case.").

8

State, without limitation of any kind, are not properly "tailored with regard to time, place, or subject matter" and do not seek information that is reasonably calculated to lead to the discovery of admissible evidence. *See Nat'l Lloyds*, 507 S.W.3d at 225–26 (holding that discovery order requiring National Lloyds to produce all management reports, emails, and related correspondence about insurance claims "in different counties, experiencing different causes of loss, on different dates" was overly broad); *cf. Nat'l Lloyds*, 449 S.W.3d at 489–90 (holding that claims files of similarly situated but unrelated third parties were not relevant to undervaluation claim); *In re State Farm Lloyds*, No. 02-20-00163-CV, 2020 WL 5242414, at *5 (Tex. App.—Fort Worth Sept. 3, 2020, orig. proceeding [mand. denied]) (mem. op.) ("Those variables are unique to each claim and have no bearing on whether State Farm's investigation or reliance on Bryant Consultants' report was reasonable."). Thus, we conclude that the trial court abused its discretion by denying the motion to quash as to the part of Question 7 not expressly limited to requirements that would be applicable to Browning's claim and policy.

**State Farm's Duties (Question No. 9)**

State Farm objected that the question about duties it owes in a first-party insurance claim impermissibly seeks testimony on a question of law and, thus, is not an appropriate question for the corporate representative. At the motion-to-quash hearing, State Farm acknowledged that Browning had already questioned Alvarado about this topic and that Alvarado had answered that he thought his duties were to

9

conduct a reasonable investigation, pay whatever is owed under the policy, and make no misrepresentations in handling the claim. In describing the intended scope of the question, Browning's lawyer told the court, "[O]bviously[,] they're, you know, the legal duties under Chapter 541, but . . . I just want to question somebody with respect to State Farm's policy, you know, with respect to their duties that they believe they owe to a first-party insured." He clarified that he meant he wanted to ask about whether Browning had followed State Farm's "internal procedures."

Before the hearing, State Farm had agreed to produce a company representative to testify to a more limited topic included within Question 9: "State Farm's formal written policies and procedures that serve as criteria for determining whether claims are covered or excluded by any policy provisions you contend applied to Plaintiff's claim." But the trial court did not so limit the question.

Whether a legal duty exists based on a particular set of facts is a question of law for the trial court. *See, e.g.*, *Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005); *Pickens v. Tex. Farm Bureau Ins.*, 836 S.W.2d 803, 805 (Tex. App.—Amarillo 1992, no writ); *Walker v. Fed. Kemper Life Assurance Co.*, 828 S.W.2d 442, 452 (Tex. App.—San Antonio 1992, writ denied). Thus, as worded, Question 9 is overbroad in that it seeks both relevant information—duties that may have arisen according to State Farm's particular policies and procedures—and information not reasonably calculated to lead to the discovery of admissible evidence—duties that arise as a matter of law in a first-party claim. *See In re Allstate Cnty. Mut. Ins.*, 227 S.W.3d 667, 670 (Tex. 2007) (orig.

10

proceeding) ("Overbroad requests for irrelevant information are improper whether they are burdensome or not."). *But cf. In re Sting Soccer Grp., LP*, No. 05-17-00317-CV, 2017 WL 5897454, at *7 (Tex. App.—Dallas Nov. 30, 2017, orig. proceeding) (mem. op.) (holding that requests asking plaintiff "to produce documents it possessed that supported the specific allegations in [its] petition" merely sought permissible discovery supporting plaintiff's specific factual and legal contentions under Rules 192.3(j) and 197.1, and thus were "not objectionable for seeking legal conclusions"). Although Browning contends in this court that she seeks only customer-service-related information, such as whether Alvarado violated company policy when he allegedly was rude to Browning, the question is not so limited. Thus, the trial court should not have denied the motion to quash as to Question 9 as written.

**Advertising (Question No. 12)**

State Farm contends that advertising materials are not relevant to the dispute because Browning did not identify any advertisement she relied on to her detriment. At the motion-to-quash hearing, Browning's counsel indicated that he wanted "to question a corporate representative with respect to this water[-] damage endorsement and how it's marketed to people." According to Browning's counsel, because his client had paid for the extra endorsement, she was "shocked" when her claim was denied; therefore, he believed "there's some confusion with respect to the way this stuff is marketed which puts the advertisements and marketing into play." In

response to the mandamus petition, Browning argued that "she would not have paid extra for it had the truth been disclosed."

Browning has not alleged that she was misled by State Farm's advertising or even that she saw any advertising that influenced her decision to purchase insurance, or the particular water-damage endorsement at issue, from State Farm. That State Farm might have advertised about the water-damage endorsement or its handling of plumbing-leak claims in Texas in a way that confused or impacted other homeowners is not relevant to whether Browning purchased her policy and endorsement under a mistaken belief; thus, this question seeks to engage in an impermissible fishing expedition. *See Nat'l Lloyds*, 449 S.W.3d at 489 ("Scouring claim files in hopes of finding similarly situated claimants whose claims were evaluated differently from Erving's is at best an 'impermissible fishing expedition.'"); *In re Ford Motor Co.*, 427 S.W.3d 396, 397 (Tex. 2014) (orig. proceeding); *In re Tex. Christian Univ.*, No. 02-20-00350-CV, 2021 WL 126578, at *7 (Tex. App.—Fort Worth Jan. 14, 2021, orig. proceeding) (mem. op.). Accordingly, we conclude that the trial court abused its discretion by denying the motion to quash as to this question.

**Cycle Times or Metrics (Question 6), Compensation Structure for First-Party Adjusters of Browning's Claim (Question 10), and Performance Reviews for First-Party Adjusters of Browning's Claim (Question No. 13)**

This group of questions seeks information that might shed light on whether or why Alvarado or any other first-party adjuster working on Browning's claim[3] failed to reasonably investigate Browning's claim.

According to Browning, the question about cycle times or metrics is relevant to the dispute because Alvarado "may have felt 'rushed' to deny Browning's claim"; in other words, "[p]erhaps there is pressure to 'close' claims and move on." Whether State Farm imposes cycle times or metrics on its claims adjusters that could pressure those adjusters into failing to take the time to make an adequate investigation is relevant to whether Alvarado's investigation was reasonable, regardless of whether that evidence would ultimately be admissible. *See* Tex. R. Evid. 401. For the same reason, the question about Alvarado's compensation structure,[4] as opposed to his particular compensation, and his past performance reviews are relevant. *Cf. In re State Farm Lloyds*, No. 13-16-00362-CV, 2016 WL 5234610, at *4 (Tex. App.—Corpus Christi–Edinburg Sept. 19, 2016, orig. proceeding) (mem. op.) (holding request for

---

[3]Browning contends that at least one other adjuster worked on her claim. State Farm does not contest that assertion. Assuming that allegation is true, the same logic that applies to Alvarado with respect to this question applies to any other adjuster working on Browning's claim, in light of the allegations in Browning's petition.

[4]As the trial court acknowledged, Browning's primary interest is not in Alvarado's specific salary, but whether State Farm had any incentives that would reward him for denying claims or processing them quickly.

reinspection files of adjuster was relevant when plaintiff had alleged that State Farm unreasonably relied on adjuster's evaluation of claim when it had failed to properly train him and knew that he was incompetent).[5]

**Electronic Information Storage (Question 14)**

State Farm contends that Question 14, about the existence and location of electronically stored information related to Browning's claim, is vague, ambiguous, and irrelevant on its face because "it could be read to call for testimony about the vast universe of State Farm's electronic programs, software, networks, databases, and other wholly irrelevant computer systems."

At the motion-to-quash hearing, Browning's counsel told the trial court that this deposition topic is related to State Farm's objections that much of the propounded discovery would be too burdensome to answer: "I wanna talk to somebody knowledgeable with respect to their system to figure out the burdensomeness and what we need to do to get it. . . . I don't have to just take their word for it, with respect to their litany of objections." State Farm responded that it

---

[5]State Farm also contends that Questions 6 and 10 impermissibly ask for protected confidential, trade-secret information and that Question 13 asks for private employee information. But State Farm did not include anything in the mandamus record indicating that it properly raised a trade-secret privilege or privacy right, or if it did, that it met its burden to prove it. *See In re Continental Gen. Tire, Inc.*, 979 S.W.2d 609, 613 (Tex. 1998) (orig. proceeding); *In re Marshall*, 617 S.W.3d 670, 675–76 (Tex. App.—San Antonio 2021, orig. proceeding); *In re Mid-Century Ins.*, 549 S.W.3d 730, 733 (Tex. App.—Waco 2017, orig. proceeding); *In re Crestcare Nursing & Rehab. Ctr.*, 222 S.W.3d 68, 72–75 (Tex. App.—Tyler 2006, orig. proceeding [mand. denied]) (explaining also why information that implicates privacy concerns may be discoverable).

14

had "produced all of the pertinent documents that deal with the handling of this claim and all of the issues that are raised . . . under the Insurance Code" and that although those documents had not been "provided in native format, [they were] provided . . . in a way that is searchable." The trial judge decided to allow the topic: "I'm going to allow [Browning's counsel] to ask . . . what the process is in order to obtain the information whenever there are objections that have been asserted that it is unduly burdensome. . . . So it's very specific related to objections on requests for production and/or interrogatories."

Although State Farm contends that the question is not limited in the trial court's order to the specific extent recited by the trial judge at the hearing, as written it seeks the type of information the Texas Supreme Court has encouraged parties to obtain, albeit by agreement without court intervention if possible:

> [P]rior to promulgating requests for electronic information, parties and their attorneys should share relevant information *concerning electronic systems and storage methodologies* so that agreements regarding protocols may be reached or, if not, trial courts have the information necessary to craft discovery orders that are not unduly intrusive or overly burdensome. The critical importance of *learning about relevant systems* early in the litigation process is heavily emphasized in the federal rules. Due to the "volume and dynamic nature of electronically stored information," failure to become familiar with relevant systems early on can greatly complicate preservation issues, increase uncertainty in the discovery process, and raise the risk of disputes.

*In re Weekley Homes, L.P.*, 295 S.W.3d 309, 321–22 (Tex. 2009) (orig. proceeding) (emphasis added). *But cf. In re Exxon Corp.*, 208 S.W.3d 70, 71–77 (Tex. App.—Beaumont 2006, orig. proceeding) (granting mandamus relief from trial court's order

compelling Exxon to produce additional corporate representative, which in that case could only have been Exxon's counsel, for deposition on efforts underlying search for already-produced documents to determine if all pertinent locations outside of industrial hygiene file room had been searched—after trial court had already allowed deposition of corporate representative to testify about existence; "electronic creation, duplication[,] and storage"; location; "organization, indexing[,] and filing;" and "method of search" for documents in industrial hygiene file room).  Additionally, contrary to State Farm's assertion, the question does not compel or even authorize the production of previously produced documents in native format rather than searchable pdf as provided by State Farm; rather, it seeks more information about where and how State Farm electronically stores information about a particular claims file.  *See In re State Farm*, 520 S.W.3d at 607–12 (setting forth case-by-case proportional balancing test of burden versus need for trial court to consider in determining whether to compel party to produce discovery in native format).[6]  Thus, the trial court did not abuse its discretion by denying the motion to quash as to Question 14.

## Conclusion

Because parts of the trial court's order denying State Farm's motion to quash as to Questions 7, 9, and 12 compelled discovery beyond the scope of the Rules of Civil Procedure, and therefore no adequate remedy by appeal exists, *Nat'l Lloyds*, 507

[6]State Farm also contends that this question impermissibly asks for protected confidential, trade-secret information.  But as it did with Questions 6 and 10, it failed to meet its burden to show that this privilege applies.  *See supra* note 5.

S.W.3d at 223, we order the trial court to vacate those parts of its September 27, 2021 order denying State Farm's motion to quash, without prejudice to the entry of an amended order allowing similar questions more appropriately limited in scope. *See, e.g.*, *In re Walmart, Inc.*, 620 S.W.3d 851, 868 (Tex. App.—El Paso 2021, orig. proceeding [mand. filed]); *In re Allstate Fire & Cas. Ins.*, 617 S.W.3d 635, 648 (Tex. App.—Houston [14th Dist.] 2021, orig. proceeding); *In re Master Flo Valve Inc.*, 485 S.W.3d 207, 214 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding). A writ of mandamus will issue only if the trial court fails to comply with this order.

We deny the Emergency Motion for Temporary Relief as moot.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: December 9, 2021