In re EXXON CORPORATION, Exxonmobil Oil Corporation, Individually f/k/a Mobil Oil Corporation and a/k/a Mobil Chemical Company, A Division of Exxonmobil Oil Corporation, Mobil Chemical Company, Inc., Individually and f/k/a Mobil Chemical Corporation.

No. 09–06–298 CV.

Court of Appeals of Texas, Beaumont.

Oct. 12, 2006.

Tynan Buthod, Russell Lewis, Baker Botts LLP, Houston, Jessica B. Pulliam, Baker Botts LLP, Dallas, for relators.

Denyse Clancy, John Langdoc, Baron & Budd, P.C., Dallas, for real parties in interest.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

PER CURIAM.

In this mandamus proceeding, we must decide whether the trial court may compel a party to present a deponent to testify as to the efforts taken to search for documents requested in requests for production that have been previously responded to by the relators. The real parties in interest produced no concrete evidence of discovery abuse in this case and failed to justify an investigation into the relators' discovery compliance. Because the trial court's order provides the real party in interest with a license to engage in a fishing expedition regarding matters either privileged or not relevant to the subject matter of the pending action, we conditionally grant mandamus relief.

Exxon Corporation, ExxonMobil Oil Corporation, individually f/k/a Mobil Oil Corporation and a/k/a Mobil Chemical Company, a Division of ExxonMobil Oil Corporation, Mobil Chemical Company, Inc., individually and f/k/a Mobil Chemical Corporation,[1] are defendants in consolidated suits filed by the real parties in interest, Herbert Wilkinson, Peggy Hebert,[2] and Ann Stubbs, Individually and as Representative of the Estate of Ben Stubbs.[3] The plaintiffs allege Herbert Wilkinson and Ben Stubbs developed cancer as a result of benzene exposure that occurred while working intermittently as contract employees on Exxon's premises. In the three years the suits have been on file, the plaintiffs have served a series of requests for production of documents, many of them unlimited in time and location. The relators objected to the scope, burdensomeness, and lack of relevance of the requests, but provided over 25,000 pages of documents and made its 100,000 document Exxon–Baytown Industrial Hygiene File Room ("IH file room") available to the plaintiffs. The plaintiffs filed a motion to compel Exxon to comply fully with the requests.

Wilkinson noticed the deposition of "the person or persons most knowledgeable regarding" documents previously requested in three sets of requests for production, as to: (1) existence; (2) electronic creation, duplication and storage; (3) document retention and destruction policies; (4) location; (5) organization, indexing and filing; (6) method of search; (7) completeness; and (8) authenticity. Exxon moved to quash the deposition. At the hearing, Exxon offered to tender an industrial hygienist for deposition on documentation. On December 14, 2005, the trial court denied Exxon's motion to quash the deposition with the following notation: "The deposition will be for a records custodian only. There will be no interrogation other than as it relates to records."

The plaintiffs deposed the records custodian for the industrial hygiene file room.

---

1. For convenience, this opinion collectively refers to Exxon Corporation, ExxonMobil Oil Corporation, and Mobil Chemical Company, Inc., as "Exxon" as though the corporations were a single party.

2. In this opinion, Wilkinson and Hebert are collectively referred to as "Wilkinson."

3. Only Wilkinson presented a deposition notice, but the trial court expanded the order to include Stubbs. The order consolidating the Wilkinson and Stubbs suits is the subject of a separate mandamus proceeding styled *In re Shell Oil Company*, 202 S.W.3d 286 (Tex. App.-Beaumont, 2006).

According to the deponent, records of any hazards exposed to employees and matters related to the industrial hygiene group are documented in the IH file room. The file room does not contain the records of the medical, safety, and environmental departments, although some documents from those departments are contained in the room. The deponent testified, in response to questions about various requests for production, that she was unaware of the existence of any responsive documents other than those contained in the file room. She did not know where Exxon kept its epidemiological studies. She knew Exxon kept a file on benzene in the IH file room, but she did not know if it included a report on the toxicological effects of benzene. She testified that all the industrial hygiene groups share their information, but she could not personally testify as to what particular documents the medical or industrial hygiene group at Exxon corporate might have in their possession. She had not seen any work permits for Wilkinson and could not testify as to whether there were any in Exxon's possession. Generally speaking, the deponent could testify about the type of documents in the file room, but could not discuss their contents, and she could not within her knowledge state tat no other departments of Exxon possessed responsive documents not contained in the IH file room over which she had charge.

Wilkinson and Stubbs noticed another deposition of a person to testify fully as to the existence of documents previously requested in six sets of requests for production, as to: (1) existence; (2) electronic creation, duplication and storage; (3) document retention and destruction policies; (4) location; (5) organization, indexing and filing; (6) method of search; (7) completeness; and (8) authenticity. Exxon objected on the grounds that the requests were "overly broad, unduly burdensome, unlim-ited in time and scope, and not reasonably calculated to lead to the discovery of admissible evidence." Exxon further objected on the ground that the plaintiff's deposition topics sought to invade the attorney-client privilege and the work product doctrines. Exxon also objected that the notice identified topics that exceeded the scope permitted by the trial court's order. Wilkinson and Stubbs presented additional requests for production of documents the day before the scheduled deposition.

Exxon produced an industrial hygienist for deposition. From 1989 to 1997, this witness generated documents and oversaw and supervised individuals who generated documents filed in the IH file room. The documents discussed in the deposition were usually referred to by Bates stamp and appear to have been produced to the plaintiffs. The deposition was not limited to a discussion of documents or document production and it was several hours into the deposition before the deponent was asked if she could provide testimony regarding the method of search for the responsive documents. The deponent replied that the only information she could provide was what Exxon's attorneys provided to her. When asked about epidemiological studies, the deponent stated that the studies were not secret documents and could be found in several places, including the Baytown IH file room. She identified by name the epidemiologists and industrial hygienists working at ExxonMobil Biomedical Sciences group in Annandale, New Jersey, but she did not personally speak with anyone in Annandale about the requests for production of documents and could not say if they had been contacted about the requests. She also identified the librarian at the Annandale facility. As for the completeness of the responsive documents, she testified that the people who retrieved the documents went where she

would have gone to look for the documents.[4] She also expressed concerns about a document compiled from a database. The deponent was not sure if the search parameters had captured all the relevant data because she did not see some of the units she expected to see for a report concerning both Wilkinson and Stubbs. Generally speaking, this witness possessed extensive knowledge of Exxon's efforts in monitoring and protecting workers at its facilities, and could explain the documents in the IH file room, but could not tell the plaintiffs that they possessed all possible responsive documents because she had not personally participated in the search.

Next, Stubbs and Wilkerson filed a motion to compel compliance with the trial court's orders regarding discovery and requested sanctions be imposed on Exxon for having produced witnesses that had no knowledge of the method of Exxon's search for documents responsive to the requests for production. In its response, Exxon stated that "In-house and outside counsel compiled responsive documents and to date have produced well over 100,-000 responsive documents." Exxon took the position that the plaintiffs have known "that no one individual outside of the legal team compiled responsive documents...." Exxon re-urged its previous objections to the requests for production. The trial court addressed the matter in a hearing. During the hearing, the plaintiffs' lawyers presented the issue as follows:

> There is some representative on behalf of Exxon who is knowledgeable about what documents are in that room, knows the efforts that were made to gather those documents, is familiar with our Requests for Production and we frankly believe it's a lawyer and Exxon wants to

protect the lawyer from being deposed. It's that simple. If Exxon wants to make a lawyer its custodian of records and to comply with the Requests for Production of documents, sobeit....

> ....

> ... The [industrial hygiene file] room is not the universe of Exxon, the multinational, giant company's documents. We want to know about the documents that aren't inside of that room. We've already seen the documents inside that room. They opened the door for—for our lawyers. This really goes to all the other places and all the things that all these other companies did. When—when the Court ordered the other companies, they said, "Here's a lawyer. Here's somebody from our legal department. Here's the folks who actually put their hands on the documents, the folks who actually read the requests." And we just would ask that Exxon play by the same rules, Your Honor.

Counsel for Exxon explained that Exxon and plaintiffs' previous counsel worked cooperatively to determine which documents needed to be produced, that Exxon's in-house and the outside counsel compiled the documents, and that plaintiffs' previous counsel were the ones who searched for responsive documents and not any records custodian for Exxon. Counsel for Wilkinson and Stubbs replied that if no one at Exxon had performed the search, they needed to, and asked the trial court to order Exxon to produce a responsive person who had actually done a search "at all the places that documents are out there that are responsive to this request."

On June 8, 2006, the trial court granted the plaintiffs' motion to compel compliance with the court order of December 14, 2005,

---

4. In the course of the deposition, Exxon's counsel noted that counsel for the plaintiffs had access to, but had not taken a copy of a monitoring document on Stubbs.

ordered Exxon to produce a deponent fully responsive to Wilkinson's November 23, 2005, notice of deposition and a deponent responsive to the same or a substantially similar type of deposition notice for Stubbs. The court ordered that the deposition take place at the Dallas offices of the plaintiffs' lawyers, and ordered Exxon to pay the cost of the deposition. The order directed the plaintiffs to narrow the number of requests to any 30 from 200, and the plaintiffs communicated their selections by letter dated June 26, 2006. Exxon filed this petition for writ of mandamus and we stayed the deposition pending our consideration of the petition.

Exxon contends the plaintiffs' overbroad discovery requests constitute an improper fishing expedition. Because it complied with the order of December 14, 2005, Exxon argues, its compliance may not be further compelled by the trial court's order of June 8, 2006. Exxon contends it exercised exhaustive efforts to produce a reasonable breadth of discovery, so a third company representative deposition is neither beneficial nor appropriate. According to Exxon, the witnesses previously produced were prepared to discuss the proper subjects of the deposition notices, that is, the location, authenticity, and existence of documents reasonably responsive to the discovery requests. Sworn oral responses to requests for production of documents are not contemplated by the Rules of Civil Procedure, Exxon argues, and requiring a corporate representative to testify about the method of search for the responsive documents necessarily invades protected attorney-client and work product privileges.

Wilkinson and Stubbs insist the deposition cannot be characterized as a fishing expedition because they are not seeking further document production at the time of the deposition. Information as to whether Exxon performed a diligent search cannot encompass work product, they contend, because the documents are not created in preparation for litigation. Because they seek only to obtain information regarding the diligent search performed by a person whose duties at Exxon would make them familiar with the existence, location, and creation of documents relevant to such matters as health and safety issues concerning benzene, their questions will not venture into information prepared for litigation. Wilkinson and Stubbs note that they directed their discovery requests to Exxon, not its attorneys. Any inquiry into attorney-client privilege is premature, they contend, because information with respect to Exxon's production of relevant, non-privileged documents do not involve attorney-client confidential communications. If the industrial hygienist had reviewed the requests for production prior to her deposition, they argue, she would have been capable of responding to their questions.

Wilkinson and Stubbs contend the specific discovery they seek is explicitly authorized by Rules 192.3(b) and 196.2(b)(4) of the Rules of Civil Procedure. According to the real parties in interest, documents essential to their claims that Exxon exposed them to unsafe levels of benzene reside outside the industrial hygiene file room. The purpose of the deposition, they contend, is to determine whether anyone from Exxon performed a "diligent search" for documents located at ExxonMobil Biosciences in New Jersey. Wilkinson and Stubbs refer to the librarian at Annandale, New Jersey, and to a records custodian at a facility on Bell Street in Houston, and suggest these persons would be able to speak knowledgeably as to the existence of benzene-related documents in their collections.

██ In general, a party may obtain discovery regarding any non-privileged matter relevant to the subject matter of

the pending action. Tex.R. Civ. P. 192.3(a). "A party may obtain discovery of the existence, description, nature, custody, condition, location, and contents of documents ... that constitute or contain matters relevant to the subject matter of the action." Tex.R. Civ. P. 192.3(b). Although the scope of discovery is generally within the trial court's discretion, the trial court abuses its discretion by ordering discovery that exceeds that permitted by the rules of procedure. *See Texaco, Inc. v. Sanderson,* 898 S.W.2d 813, 815 (Tex. 1995). To be valid, a request for production must show a reasonable expectation of obtaining information that will aid the dispute's resolution. *In re CSX Corp.,* 124 S.W.3d 149, 152 (Tex.2003) (citing *In re Am. Optical Corp.,* 988 S.W.2d 711, 713 (Tex.1998)). Therefore, discovery requests must be "reasonably tailored" to include only relevant matters. *Id.* "Discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad." *In re CSX Corp.,* 124 S.W.3d at 152. "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *Id.* at 153. Several of the requests for production in this case are strikingly similar to the request for all documents written by a former corporate safety director " 'that concern safety, toxicology, and industrial hygiene, epidemiology, fire protection and training' " held to be overbroad in another benzene exposure case decided over a decade ago. *Texaco,* 898 S.W.2d at 814.[5]

■ Although it is evident that there was no attempt made to narrowly tailor the discovery in this case, the issue presently before us is not whether the plaintiffs' requests for production are unduly burdensome and overly broad. The order being challenged compels submission to a deposition, not the production of documents. The time and scope of the requests matter only because the overbroad requests begat an overbroad response. Having been required to produce every document it possessed relating to benzene, Exxon's response was to object but to also offer a compromise: that the Baytown industrial hygiene file room would be available for inspection and document copying. Wilkinson and Stubbs subsequently took the depositions of the person who could tell them what documents are contained in the room and the person who could tell them what documents have been generated regarding benzene exposure at the facility in question. Apparently, no longer satisfied with that solution now that they have twice taken full advantage of access to the IH file room, the plaintiffs seek to depose an Exxon representative for the purpose of inquiring specifically into the process by which Exxon's representative responded to the requests for production. This subject necessarily and almost exclusively concerns the "mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives" and consists of the "attorney's representative's mental impressions, opinions, conclusions, or legal theories" subject to protection as work product and core work product. *See* Tex.R. Civ. P. 192.5(a)(1), (b)(1).

---

5. Considering that the trial court obviously has not to this point considered Exxon's objections to the individual requests for production, we avoid discussing whether any particular request is overbroad or unduly burdensome. *See American Optical Corp.,* 988 S.W.2d at 713–14.

■ It cannot reasonably be argued in this Court that the anticipated deponent is not one of Exxon's attorneys. During the June hearing, plaintiffs' counsel informed the trial court that he suspected the knowledgeable representative was indeed an Exxon lawyer and Exxon confirmed with the trial court that counsel responded to the requests for production. "Compelling an attorney of record involved in the litigation of the case to testify concerning the suit's subject matter generally implicates work product concerns" and "is inappropriate under most circumstances." *In re Baptist Hosps. of S.E. Tex.*, 172 S.W.3d 136, 140, 145 (Tex.App.-Beaumont 2005, orig. proceeding). *Baptist Hospitals* concerned counsel of record who possessed relevant factual information about the case. *Id.* at 143. This case may involve either counsel of record or in-house counsel not acting as counsel of record in this litigation, and in that sense is distinguishable from *Baptist Hospitals*. In that case, however, the potential existed for the demonstration of substantial need for non-core work product. *Id.* at 145. In this case, the discovery is being conducted into how Exxon conducted this litigation, as opposed to Exxon's research on benzene. This inquiry is designed to inquire into mental processes of counsel and is not reasonably calculated to lead to the discovery of admissible evidence. In that sense, there is a greater need for protection in this case than was present in *Baptist Hospitals*.

The record does not support a claim that relevant documents reside solely outside the industrial hygiene file room. To support their claim that Exxon failed to provide all responsive documents, the real parties in interest refer to another case in which their counsel deposed the same industrial hygienist they deposed in this case. They do not show that the deposition was presented to the trial court, nor does the cited reference establish that

Exxon failed to produce any documents relating to the Wilkinson and Stubbs cases. The industrial hygienist merely stated that if she were to search for documents with respect to work permits issued to Mundy Construction Company, she would start at the safety department at Baytown.

During the December 2005 hearing, counsel for the plaintiffs referred to "the Esso toxigrams" that "talk directly to the hazards of exposure to benzene on the blood-forming organs." Counsel suggested the documents were responsive to at least two of the requests for production but were not produced. Counsel explained to the court that they needed to ask the person at Exxon who looked for the documents to see why the person did not go to where the documents are kept and get them for the plaintiff. Counsel argued the plaintiffs were seeking a statement under oath that all responsive documents had been produced. Counsel for Exxon informed the court that the Esso toxigram was part of a document, called the Rawl report, that had been sent to counsel for the plaintiffs some time earlier. During the May 2006 deposition of the industrial hygienist, plaintiff's counsel mentioned that he had with him a copy of "Esso's 1958 Toxigram." Counsel read from the document and asked the hygienist questions about it. If Exxon had not provided the document before the first hearing, it is clear that the plaintiffs have it now. Wilkinson and Stubbs failed to establish any document withholding or other discovery abuse by Exxon.

Wilkinson and Stubbs obtained the trial court's permission to depose witnesses purely for the purpose of exploring Exxon's efforts in responding to the discovery requests, without first establishing necessity for the inquiry. This is precisely the sort of fishing expedition forbidden by the

Texas Supreme Court. "A trial court's ruling that requires production beyond what our procedural rules permit is an abuse of discretion." *In re Dana Corp.,* 138 S.W.3d 298, 301 (Tex.2004). "If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist." *Id.*

We hold the trial court abused its discretion and that there is no adequate remedy at law to remedy the error. Accordingly, we conditionally grant mandamus relief and direct the trial court to vacate its orders requiring Exxon Corporation, ExxonMobil Oil Corporation, or Mobil Chemical Company, Inc., to present a deponent responsive to Plaintiffs' November 23, 2005, deposition notice, or any substantially similar notice by Herbert Wilkinson, Peggy Hebert, or Ann Stubbs, Individually and as Representative of the Estate of Ben Stubbs. We are confident the trial court will vacate its previous orders and that any further discovery orders issued in the case will be consistent with this Opinion. The writ shall issue only if the trial court fails to act promptly in accord with this Opinion.

WRIT CONDITIONALLY GRANTED.