# NO. 12-24-00068-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | *§* | |
| *LONGVIEW MEDICAL CENTER, L.P. D/B/A LONGVIEW REGIONAL MEDICAL CENTER,* | *§* | *ORIGINAL PROCCEDING* |
| *RELATOR* | *§* | |

## *MEMORANDUM OPINION*

Longview Medical Center, L.P. d/b/a Longview Regional Medical Center (LRMC) filed a petition for writ of mandamus challenging Respondent's orders denying its motion to compel and granting Real Parties in Interest Korry Shelton and Stephanie Shelton, individually and on behalf of R.S., a minor's (collectively the Sheltons) motion for protection related to the discovery of settlement agreements among co-defendants.[1]   In its petition, LRMC further challenges Respondent's orders denying LRMC's motion to quash the notice of deposition and subpoena duces tecum of its corporate representative and motion for protection regarding the deposition topics in the notice.  We conditionally grant relief in part and deny relief in part.

## BACKGROUND

Stephanie Shelton was admitted at LRMC on September 25, 2019, for a scheduled, induced labor.  The Sheltons allege in their pleadings that the child, R.S. was, upon admission, healthy-intrauterine and neurologically intact.  The Sheltons further allege that during Stephanie's

---

[1] Respondent is the Honorable Vincent Dulweber, Judge of the County Court at Law Number 2 in Gregg County, Texas.

seventeen-hour labor, problems arose and R.S.'s fetal heartbeat deteriorated to the point where Stephanie's attending physician was forced to attempt an urgent, forceps delivery rather than earlier delivering R.S. by Cesarean section when the child still was neurologically intact. Following delivery, R.S. required resuscitation and intubation and had onset seizures within the first hour of life. R.S. was diagnosed with hypoxic-ischemic encephalopathy and spastic quadriplegic cerebral palsy and will require medical care and twenty-four-hour supervision for the remainder of his life.

The Sheltons filed the instant suit against LRMC and other defendants and sought to recover damages for medical malpractice. They further allege that LRMC is vicariously liable for the negligent acts and omissions of its nurses, employees, and agents and independently deviated from the standard of care and is directly liable for its failure to educate, train, and supervise its employees/nursing staff and for its failure to follow its own policies and procedures. LRMC answered, asserted a general denial, and, in pertinent part, asserted the defense of comparative responsibility and alleged that, in the event it is found to be liable, it is entitled to a credit or offset from sums the Sheltons receive by way of settlements.

**The Settlement Agreement**

As pre-trial matters proceeded, LRMC served the Sheltons with a request for disclosure, as well as a request for production of documents, including Request No. 11, which sought "[a]copy of any formal or informal agreements, understandings, or contracts entered into with any other party to this Lawsuit or any third-party regarding liability, damages, settlement, dismissal, or other disposition of the present suit or any other suit related to the Incident in question made the basis of this Lawsuit." The Sheltons responded, "None."

More than one year later, in November 2023, the Sheltons entered into a settlement agreement with defendants Dr. Charles Newlin and Diagnostic Clinic of Longview. The Sheltons further moved to appoint a guardian-ad-litem and, in that motion, represented that they reached a settlement agreement.[2]

On January 4, 2024, Respondent conducted a minor-settlement hearing on the settlement agreement. LRMC's counsel appeared, but the Sheltons and the settling defendants objected to

---

[2] LRMC requested a copy of the settlement agreement pursuant to its request for disclosure. The Sheltons responded that they would provide the relevant portions of the agreement but ultimately did not provide the agreement until the matter was resolved by Respondent.

his being present and requested that he be excluded from the hearing based on the confidentiality provisions in the settlement agreement. LRMC's counsel objected that such exclusion was a violation of LRMC's due process rights, but Respondent excluded him, and the hearing proceeded ex parte.

On January 15, LRMC filed a motion to compel production of the settlement agreement, as well as a transcript of the minor-settlement hearing. A hearing was set on the matter for January 30. On January 25, the Sheltons served amended responses to LRMC's request for disclosure and Request No. 11, in which they first raised objections to the requests. That same day, the Sheltons and the settling defendants filed a Joint Motion for Protective Order, by which they sought protection from production of any information related to their settlement agreement based on the confidentiality provisions contained therein. On January 29, the trial court sustained the Sheltons' objections to LRMC's requests for disclosure and Request No. 11 and granted the Joint Motion for Protective Order.

In response, LRMC filed an amended motion to compel production of all settlement agreements and a request for a transcript of the minor-settlement hearing, as well as a motion to vacate Respondent's January 29 order. Respondent conducted a hearing on LRMC's motion on February 14. At the conclusion of the hearing, Respondent stated that it would conduct an in-camera review of the settlement agreement to determine whether and to what extent it might be discoverable. On February 21, by a letter-ruling, Respondent ordered the production of a redacted version of the settlement agreement, the Rule 11 agreement, and redacted draft-settlement agreement between the Sheltons and the settling defendants. That same day, Respondent denied LRMC's motions with the notation, "Order no longer needed. Issue addressed in separatee [sic] ruling."

In response, LRMC filed a letter, in which it noted several, outstanding matters not addressed in Respondent's letter-ruling. On February 27, Respondent issued a letter-ruling permitting LRMC to obtain a copy of the transcript of the minor-settlement hearing. It further issued an order (1) denying LRMC's motion to vacate the order granting the joint motion for protection, (2) sustaining the Shelton's objections to Request No. 11, except as to the portions of the settlement agreement it previously deemed relevant, (3) summarizing the letter-rulings regarding production of the redacted settlement agreement and minor-settlement-hearing transcript, and (4) denying all other relief sought by LRMC. On February 28, Respondent issued

another letter-ruling, by which it ordered the production of a redacted version of the draft-settlement agreement presented at the minor-settlement hearing.

**Notice of Deposition of LRMC's Corporate Representative**

On November 15, 2023, the Sheltons served their first amended notice to take oral and video-taped deposition of LRMC's corporate representative with subpoena duces tecum. The notice included nine proposed topics.[3] LRMC moved to quash the deposition notice and filed a motion for protection. On December 11, Respondent conducted a hearing on the matter. On January 4, 2024, Respondent denied LRMC's motion to quash and motion for protection.

Thereafter, LRMC filed this petition for writ of mandamus.

## AVAILABILITY OF MANDAMUS

Mandamus relief is available if the relator establishes a clear abuse of discretion for which there is no adequate remedy by appeal. *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding). "Generally, the scope of discovery is within the trial court's discretion, but the trial court must make an effort to impose reasonable discovery limits." *Id.* (quoting *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding)). A trial court abuses its discretion if it orders discovery exceeding the scope permitted by the rules. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding); *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996) (orig. proceeding); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding); *In re Michelin N. Am., Inc.*, No. 05-15-01480-CV, 2016 WL 890970, at *4 (Tex. App.–Dallas Mar. 9, 2016, orig. proceeding) (mem. op.)

Whether a clear abuse of discretion adequately can be remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). Because this balance depends heavily on the circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories. *Id.* An appeal is inadequate when the parties are in danger of permanently losing substantial rights. *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex. 2004) (orig. proceeding). "Such a danger arises when the appellate court would not be able to cure the error, when the party's ability to present a viable claim or defense is vitiated, or when the error cannot be made part of the appellate record." *Id.* For this reason, mandamus relief is available when the

---

[3] LRMC's petition for writ of mandamus raises challenges only as to four of these topics.

4

trial court compels production beyond the permissible bounds of discovery. *See In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding). "Intrusive discovery measures . . . require, at a minimum, that the benefits of the discovery measure outweigh the burden imposed upon the discovered party." *Id.*; *see In re CSX Corp.*, 124 S.W.3d at 153 (holding relator lacked adequate remedy by appeal where discovery order compelled production of "patently irrelevant" documents); *Tilton v. Marshall*, 925 S.W.2d 672, 683 (Tex. 1996) (orig. proceeding) (mandamus relief may be justified when burden on producing party is far out of proportion to any benefit to requesting party). Furthermore, a party does not have an adequate remedy by appeal if the trial court prohibits discovery, whereby such discovery cannot be made part of the appellate record and the appellate court is, thus, unable to evaluate the effect of the trial court's order based on the record. *See In re GreCon, Inc.*, 542 S.W.3d 774, 787 (Tex. App.–Houston [14th Dist.] 2018, orig. proceeding).

## DISCOVERY OF SETTLEMENT AGREEMENT

In its first issue, LRMC argues that Respondent abused his discretion by, through various orders and letter-rulings, granting the Sheltons'[4] motion for protection, sustaining the Shelton's objections to Request No. 11, denying LRMC's motion to compel, and ordering discovery only as to a redacted version of the settlement agreement, the Rule 11 agreement, and a redacted draft of the agreement.

In support of their motion for protection and in opposition to LRMC's motion to compel, the Sheltons contended that the requests are overly broad, seek information that is not relevant and is merely a "fishing expedition" not reasonably calculated to lead to the discovery of admissible evidence, and, because of the settlement agreement, are not discoverable as they contain confidential information. LRMC argued that the settlement agreements are discoverable because they are relevant to the issue of determining settlement credits, witness prejudice or bias, and its independent evaluation of potential exposure for the purposes of assessing case value and potential settlement offers before trial. It further contends that the fact that the settlement agreement may

---

[4] There were other parties to this motion and other motions antagonistic to LRMC's discovery of settlement-agreement information. In the interest of simplicity, we refer to any such motions as to it collectively as brought by the Sheltons.

contain a confidentiality agreement does not render the settlement agreement or its contents undiscoverable.

**Governing Law**

The existence and contents of relevant portions of settlement agreements presumptively are discoverable. *See* TEX. R. CIV. P. 192.3(g); ***In re GreCon, Inc.***, 542 S.W.3d at 780. The party resisting discovery bears the burden of proof because a settling party has a copy of the settlement agreement and is in the best position to demonstrate why any portions are irrelevant and, further, civil litigants must plead and prove their entitlement to protection from discovery in a timely fashion. *See **In re GreCon, Inc.***, 542 S.W.3d at 780.

*Settlement Credits*

A prevailing party is entitled to only "one satisfaction" for an injury. ***First Title Co. of Waco v. Garrett***, 860 S.W.2d 74, 78 (Tex. 1993); ***In re GreCon, Inc.***, 542 S.W.3d at 782. "[W]hen a plaintiff files suit alleging that multiple tortfeasors are responsible for the plaintiff's injury, any settlements are to be credited against the amount for which the liable parties as a whole are found responsible, but which only the non-settling defendant remains in court." ***Garret***, 860 S.W.2d at 78. "[T]he plaintiff should not receive a windfall by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already partially contributed." ***Id.*** "[I]f settling parties are partially responsible for such an injury, then as a matter of law the judgment should be reduced by the amount of any settlements so as to prevent double recovery by the prevailing plaintiff." ***Id.***

The reduction of the plaintiff's recovery may be achieved by settlement credits under Chapter 33 or the Texas Civil Practice and Remedies Code. ***Bus. Staffing, Inc. v. Viesca***, 394 S.W.3d 733, 752 (Tex. App.–San Antonio 2012, no pet.). Under Section 33.012(b), "[i]f the claimant has settled with one or more persons, the [trial] court shall . . . reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amounts of all settlements." TEX. CIV. PRAC. & REM. CODE ANN. § 33.012 (West 2020).

The defendant has the burden to prove its right to a settlement credit, including the amount of the settlement credit. *See **Mobil Oil Corp. v. Ellender***, 968 S.W.2d 917, 927 (Tex. 1998). Thus, a settlement agreement, including the dollar amount exchanged, is relevant to the remaining defendants for the purpose of determining the amount of the settlement credit. *See **In re GreCon, Inc.***, 542 S.W.3d at 782. As it relates to settlement credits, the contents of any relevant portions

of a settlement agreement, not just the settlement "amounts," must be produced before trial in response to a request for disclosure under Rule 194.2(h). *Id.* at 783; (citing TEX. R. CIV. P. 194.2(h)); *see also* TEX. R. CIV. P. 192.3(g).

### *Witness Bias or Prejudice*

"[S]ettlement agreements and offers may be discoverable for purposes other than to establish liability, such as to demonstrate bias or prejudice of a party or witness, or, to establish the existence of a promise or agreement made by nonparties to the settled lawsuit." *In re Univar USA, Inc.*, 311 S.W.3d 175, 182 (Tex. App.–Beaumont 2010, orig. proceeding). Not producing settlement agreements prevents the nonsettling defendant the opportunity to examine the contents of the settlement agreements, thereby depriving the nonsettling defendant the opportunity to evaluate whether some portions of the settlement agreements demonstrate the presence of bias. *Id.* If the agreements contain provisions that affect the testimony of the trial witnesses, the order denying production will prevent the nonsettling defendant from using the settlement agreements during trial. *Id.* By neither having the agreements in the record nor having them to utilize in examining the witnesses at trial, the nonsettling defendant is restricted of its ability subsequently to demonstrate on appeal that it did not receive a fair trial. *Id.*; *see also In re GreCon, Inc.*, 542 S.W.3d at 785.

### *Evaluation of Potential Exposure and Engagement in Settlement Negotiations*

A nonsettling defendant should be entitled to make its own, independent assessment of its settlement credits to evaluate a settlement offer to avoid trial. *Univar*, 311 S.W.3d at 181. "Because the sole source of a nonsettling defendant's knowledge about its settlement credits is based on what a party with an incentive to minimize that amount tells the nonsettling defendant, without being given the opportunity to verify that information, a nonsettling defendant might be pressured into settling." *Id.* Such a settlement, procured by darkness, is neither just, fair, equitable, or impartial, and appears to be inconsistent with the objectives of the Texas Rules of Civil Procedure. *Id.*; *see also In re GreCon, Inc.*, 542 S.W.3d at 786.

## Discussion

In the instant case, LRMC argued it was entitled to discovery of the settlement agreement documents at issue based on the foregoing grounds and relied heavily on the court's opinion in *In re GreCon*. In response, the Sheltons argue that *In re GreCon, Inc.* is distinguishable because, unlike in that case, the Sheltons filed a motion for protection. *See In re GreCon, Inc.*, 542 S.W.3d

at 781–82. However, in ***In re GreCon, Inc.***, the court also addressed the merits of the discoverability of settlement agreements based on the same arguments raised by LRMC. *See id.* at 782–87. The Sheltons do not attempt to distinguish the court's opinion in ***In re GreCon, Inc.*** on this basis. Furthermore, a settlement agreement's inclusion of a confidentiality provision does not render the agreement or its contents undiscoverable as a matter of law. ***Marteny v. Coon***, No. 09-19-00019-CV, 2020 WL 5666567, at *8 (Tex. App.–Beaumont Sept. 24, 2020, no pet.) (mem. op.); ***In re DCP Midstream, L.P.***, No. 13-14-00502-CV, 2014 WL 5019947, at *7 (Tex. App.– Corpus Christi Oct. 7, 2014, orig. proceeding) (mem. op.); *cf.* ***Scott v. Mcllhany***, 798 S.W.2d 556, 559–60 (Tex. 1990) (discussing inability of litigants to use private agreements to block discovery of information and testimony sought by third parties). Accordingly, the confidentiality provisions of the settlement agreement do not insulate the settlement agreement from discovery if the discovery otherwise is appropriate.

In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party. TEX. R. CIV. P. 192.3(a). It is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* Here, LRMC asserted the defense of comparative responsibility and alleged that, in the event it is found to be liable, it is entitled to a credit or offset from sums the Sheltons receive by way of settlements. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.003 (West 2020), 33.012, 33.013 (West Supp. 2023). Accordingly, we conclude that any relevant portions of the settlement agreement to the issue of settlement credits are discoverable. *See* ***In re GreCon, Inc.***, 542 S.W.3d at 784.

Furthermore, we reiterate that settlement agreements and offers may be discoverable for purposes other than to establish liability, such as to demonstrate bias or prejudice of a party or witness, or, to establish the existence of a promise or agreement made by nonparties to the settled lawsuit. By not producing settlement agreements, the nonsettling defendant is denied the opportunity to examine the contents of the settlement agreements, thereby depriving the nonsettling defendant the opportunity to evaluate whether some portions of the settlement agreements demonstrate the presence of bias. *See id.* at 785.

We examined in-camera the settlement agreement submitted by the Sheltons under seal. Our examination of the agreement does not reveal any provision that would demonstrate an agreement to cooperate between the Sheltons and the settling defendants. Nonetheless, in accord with the court's conclusion in *In re GreCon, Inc.*, LRMC should have the opportunity to examine the settlement agreement to determine whether it contains anything that would raise the issue of witness bias or prejudice. *See id.* at 785 (citing *In re DCP Midstream, L.P.*, No. 13-14-00502-CV, 2014 WL 5019947, at \*12 (Tex. App.–Corpus Christ Oct. 7, 2014, orig. proceeding) (mem. op.) (holding that portions of settlement agreement concerning the existence of potential witness bias were reasonably calculated to lead to the discovery of relevant impeachment or bias evidence); *Burlington N., Inc. v. Hyde*, 799 S.W.2d 477, 480–81 (Tex. App.–El Paso 1990, orig. proceeding) (explaining, with respect to contention that settlement agreement may contain or lead to Mary Carter agreement, that "[a]lthough our inspection of the document reveals nothing of the kind, we conclude that Hartman should have the opportunity to examine the agreement to determine for himself whether there is any relevant, admissible material or information that might lead to the discovery of admissible evidence"); *Nermyr v. Hyde*, 799 S.W.2d 472, 476 (Tex. App.–El Paso 1990, orig. proceeding) (same)). Accordingly, we conclude that (1) all portions of the settlement agreement are relevant or are reasonably calculated to lead to the discovery of admissible impeachment, bias, or prejudice evidence and (2) LRMC is entitled to obtain a copy of all portions of the settlement agreement, as well as the draft-settlement agreement attached to the settling-defendants' Rule 11 agreement, along with other admissible evidence related to settlement negotiations to the extent such other admissible evidence falls within the scope of the types of documents requested by LRMC's Request No. 11.[5]

Based on the foregoing, we hold that Respondent abused his discretion by denying LRMC's motion to compel, by granting the Sheltons' motion for protection, and by ordering discovery only as to redacted versions of the settlement agreement, Rule 11 agreement, and the

---

[5] Evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept––a valuable consideration in compromising or attempting to compromise the claim" at issue, as well as "conduct or statements made during compromise negotiations about the claim" may be admissible for purposes, including to prove a party's or witness's bias or prejudice. *See* TEX. R. EVID. 408; *see also In re Univar USA, Inc.*, 311 S.W.3d 175, 182 (Tex. App–Beaumont, orig. proceeding). Request No. 11 sought production of "<u>any formal or informal agreements, understandings, or contracts</u> entered into with any other party to this Lawsuit or any third-party regarding liability, damages, settlement, dismissal, or other disposition of the present suit or any other suit related to the Incident in question made the basis of this Lawsuit." (emphasis added).

draft settlement agreement. Such settlement documents are relevant to determining settlement credits and the existence of witness bias or prejudice, and LRMC is entitled to obtain a copy of all portions of the settlement agreement and draft agreement, as well as other admissible evidence related to settlement negotiations specifically sought by LRMC's Request No. 11.[6] *See In re GreCon, Inc.*, 542 S.W.3d at 786–87; *see also* TEX. R. EVID 408. We further hold that there is no adequate remedy by appeal as to the denial of this type of discovery. *See In re GreCon, Inc.*, 542 S.W.3d at 787.[7]

## CORPORATE REPRESENTATIVE DEPOSITION TOPICS

In its second issue, LRMC argues that Respondent abused his discretion in denying its motion for protection and motion to quash the Sheltons' notice of deposition and subpoena duces tecum for its corporate representative.

**Governing Law**

A trial court generally has discretion to determine the scope of discovery. *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 802 (Tex. 2017) (orig. proceeding). "Our procedural rules define the general scope of discovery as any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is reasonably calculated to lead to the discovery of admissible evidence." *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (per curiam). Accordingly, discovery must be reasonably tailored to include only matters relevant to the case. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam); *see also In re Allstate Fire & Cas. Ins. Co.*, 617 S.W.3d 635, 643 (Tex. App.–Houston [14th Dist.] 2021, orig. proceeding); *In re*

---

[6] With regard to LRMC's argument that the settlement agreement is discoverable to evaluate potential exposure and engagement in settlement negotiations, an improper motive in seeking a settlement agreement is not relevant in deciding whether settlement agreements should be produced if there are other valid bases for producing the agreements. See *In re GreCon, Inc.*, 542 S.W.3d 774, 786 (Tex. App.–Houston [14th Dist.] 2018, orig. proceeding). Even if seeking settlement agreements for the purpose of determining LRMC's exposure, standing alone, does not meet the test for relevancy, all portions of the settlement agreement are relevant to the determination of settlement credits and the existence of witness bias or prejudice. *See id.*

[7] Because the settling defendants have an expressed interest in maintaining the confidentiality of the provisions of their settlement agreement, Respondent, before compelling discovery of the settlement agreement and other documents related thereto, to the extent that any current confidentiality agreements between the parties are inadequate, shall ensure that the parties herein agree to be bound by a protective order so as to keep the contents of these documents confidential so that such information is not revealed apart from their appropriate use in the underlying litigation.

*Xeller*, 6 S.W.3d 618, 626 (Tex. App.–Houston [14th Dist.] 1999, orig. proceeding).  When discovery requests exceed these boundaries, trial courts must impose reasonable discovery limits commensurate with the scope of permissible discovery.  *See **In re Graco Children's Prods., Inc.**,* 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding) (per curiam).  A trial court abuses its discretion if it orders discovery beyond that which the rules of civil procedure permit.  ***In re N. Cypress Med. Ctr. Operating Co.***, 559 S.W.3d 128, 130–31 (Tex. 2018) (orig. proceeding).

The phrase "relevant to the subject matter" is to be broadly construed.  ***In re Nat'l Lloyds Ins. Co.***, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam).  Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information.  TEX. R. EVID. 401.  Determining which facts are "of consequence" to the action necessarily begins with a review of the pleadings.  "The materiality and relevancy of testimony is to be determined by reference to the issues made by the pleadings."  ***In re Allstate Fire & Cas. Ins. Co.***, 617 S.W.3d at 643; *see **In re Alford Chevrolet-Geo***, 997 S.W.2d 173, 180 n.1 (Tex. 1999) (stating that review of relevancy generally done by "close examination of the pleadings and specific claims and defenses made"); *see also* TEX. R. CIV. P. 192.3(a) (party may obtain discovery of matters not privileged that are relevant to the "subject matter of the pending action", whether relating to claims or defenses).  Facts that may be of consequence to issues not raised by pleadings are not permissible areas of discovery.  Discovery undertaken with the purpose of finding an issue, rather than in support of an issue already raised by the pleadings, would constitute an impermissible fishing expedition.  *See **In re Am. Home Assurance Co.***, 88 S.W.3d 370, 376 (Tex. App.–Texarkana 2002, orig. proceeding) (citing ***Alford Chevrolet-Geo***, 997 S.W.2d at 180).

## Discussion

In its notice of deposition for LRMC's corporate representative, the Sheltons listed the following topics pertinent to our discussion:

> 3. Interpretation of the information contained in the Audit Trail of the Electronic Medical Records of Stephanie Shelton produced by Longview Regional Medical Center and the location and retrieval of the audit trail.

> 4. Interpretation of the information contained in the Audit Trail of the Electronic Medical Records of R.S. produced by Longview Regional Medical Center and the location and retrieval of the audit trail.

7. Longview Regional Medical Center's supervision of Sabrina Giles while working for Longview Regional Medical Center from May 2019 to January 2020.

8. The search protocol utilized to collect relevant documents requested for the discovery responses filed by Longview Regional Medical Center in this case.

LRMC argues that the Sheltons' proposed deposition topics (1) seek to invade its work product, (2) seek irrelevant information with no bearing on material issues, (3) are unreasonably cumulative or duplicative, and (4) are unduly burdensome.

*Search Protocol Utilized to Collect Relevant Documents for Discovery Responses*

LRMC argues that this topic amounts to "an improper invasion of the highly protected and long-standing work product privilege. In support of its claim, LRMC relies on ***In re Exxon Corp.***, 208 S.W.3d 70 (Tex. App.–Beaumont 2006, orig. proceeding) (per curiam). There, the plaintiffs sought to depose an Exxon representative "'most knowledgeable regarding' documents previously requested" regarding, among other things, the "method of search." *See id.* at 71. Exxon objected that the plaintiffs deposition topics sought to invade the attorney-client privilege and the work product doctrines. *Id.* at 72. When the deponent was asked if she could provide testimony regarding the method of search for the responsive documents, she replied that "the only information she could provide was what Exxon's attorneys provided to her." *Id.* As for the completeness of the responsive documents, she testified that the people who retrieved the documents went where she would have gone to look for the documents. *Id.* at 72–73. Ultimately, the witness could not tell the plaintiffs that they possessed all possible responsive documents because she had not personally participated in the search. *Id.* at 73. The plaintiffs filed a motion to compel compliance with the trial court's discovery orders and requested sanctions because Exxon produced a witness with no knowledge of the method of its search for documents responsive to the requests for production. *Id.* Exxon responded that its in-house and outside counsel compiled responsive documents. *See id.* The trial court granted the plaintiffs' motion to compel, and Exxon sought relief by mandamus. *See id.* In analyzing the issue, the court of appeal noted that "it cannot reasonably be argued that the anticipated deponent is not one of Exxon's attorneys." *Id.* at 76. It further noted that the discovery at issue involved how Exxon conducted the process of litigation as opposed to its research on the facts underlying the case. *Id.* Thus, the court concluded that the deposition topic was designed to inquire into the mental processes of counsel and was not

reasonably calculated to lead to the discovery of admissible evidence and should be protected from discovery. *See id.*

In the instant case, there is no indication in the record that any of LRMC's attorneys or other applicable representative would be the designated corporate representative on the topic of the search protocol utilized to collect relevant documents requested. *See* TEX. R. CIV. P. 192.5(a). There further is no indication that the discovery sought matters related to how LRMC conducted the process of litigation, as opposed to its research on the facts underlying the case. *See id*. And LRMC does not elaborate in its petition as to how the methods its client utilized to compile documents responsive to discovery requests constitutes work product. *See **In re Fairway Methanol LLC***, 515 S.W.3d 480, 487 (Tex. App.–Houston [14th Dist.] 2017, orig. proceeding) (party seeking to resist discovery bears burden of proving applicable privilege). As such, we conclude that the facts of the instant case are distinguishable from those in ***In re Exxon Corp.*** and Topic 8 related to discoverable information. *See* TEX. R. CIV. P. 192.5(a).[8]

LRMC further argues that this deposition topic is unduly burdensome because there are 2,590 pages of responsive documents spanning a broad number of categories, which would not be within the knowledge base of a single, corporate representative. But in making this contention, LRMC fails to specify, to any extent, how many representatives might be required to cover this topic or what the role of such representatives might be. Without more information, we cannot determine by LRMC's blanket assertion of overbreadth or based simply on the large number of documents produced in a complex, medical malpractice case that this deposition topic is unduly burdensome. *See **In re Fairway Methanol LLC***, 515 S.W.3d at 487.

Lastly, LRMC argues that this topic does not relate to any of the Sheltons' allegations and is outside the scope of discovery on its face. In response, the Sheltons argue that their request is designed to ensure that the documents already produced comprise all documents responsive to their requests for production. Based on the Sheltons' counsel's representations to Respondent and this court that the topic limits its scope to documents responsive to discovery, it is reasonable to

---

[8] To the extent questions on this topic seek to delve into issues of LRMC's work product or attorney-client communications, such questions are improper and subject to an instruction by LRMC's counsel not to answer. *Cf. **In re USAA Gen. Indem. Co.***, 624 S.W.3d 782, 794 (Tex. 2021) (orig. proceeding). But based on the wording used in the deposition notice, we cannot conclude that the topic wholly is "cloaked in privilege." *Cf. id.*

conclude that it does not exceed the scope of discovery. *See **In re Nat'l Lloyds Ins. Co.***, 507 S.W.3d at 223.

*Audit Trails*

Topics 3 and 4 relate to the deposition of LRMC's corporate representative's testimony regarding the interpretation, location, and retrieval of the information contained in the Audit Trail[9] of the Electronic Medical Records of Stephanie Shelton and R.S. previously produced by LRMC.

LRMC argues that the Sheltons intended meaning of the term "interpretation" of the information contained in the audit trail is overbroad, lacks specificity, is unclear, and is not described with reasonable particularity. *See* TEX. R. CIV. P. 199.2(b)(1). We agree. As LRMC notes in its petition, the audit trails it produced are voluminous, comprising a combined, nearly one thousand pages of information. The word "interpretation" is not vague or unclear in and of itself. *See Interpret*, THE AMERICAN HERITAGE DICTIONARY (2nd College ed. 1982). But the Sheltons use of the word with reference to the entirety of the two audit trails is too broad and vague to give LRMC "reasonable notice" of the topics upon which its corporate representative can expect to testify. *See* TEX. R. CIV. P. 199.2(b)(1); *see, e.g.*, **In re Christianson Air Conditioning & Plumbing, LLC**, 639 S.W.3d 671, 680 (Tex. 2022) ("Though deposition topics—by their nature— may be broader in scope than individual deposition questions or interrogatories, the principle that discovery requests should not be overbroad nevertheless applies").

LRMC further argues that the Sheltons previously deposed the two nurses involved with the care at issue and who have personal knowledge regarding the entries, and, thus, the deposition topics seek cumulative and duplicative information. As set forth above, the notices at issue are too broad and vague to give LRMC reasonable notice of the topics upon which its corporate representative can expect to testify. As a result, this court cannot determine whether topics covered by other witnesses in prior depositions contain cumulative or duplicative information. Moreover, LRMC has failed to cite to this court where in the thousands of pages of the mandamus-record it may confirm the existence of this purportedly cumulative and duplicative testimony. *See **White Oak Bend Mun. Util. Dist. v. Robertson***, No. 14-00-00155-CV, 2002 WL 245957, at *5 (Tex.

---

[9] An "audit trail" is a security-relevant, chronological record, set of records, and/or destination and source of records that provide documentary evidence of the sequence of activities that have affected, at any time, a specific operation, procedure, event, or device. *See* AUDIT TRAIL, https://en.wikipedia.org/wiki/Audit_trail (last visited Jul. 2, 2024). According to LRMC, the audit trail at issue "identifies who has accessed a patient's chart."

App.–Houston [14th Dist.] Feb. 21, 2002, pet. denied) (op.) (appellate court not required to sift through voluminous deposition transcripts in search of evidence to support party's contentions).

LRMC also argues that, to the extent an audit trail identifies who accessed a patient's chart, the document speaks for itself. And to the extent the Sheltons seek further interpretation of the information, expert testimony would be required. As before, until the scope of discovery is narrowed by Respondent to give LRMC reasonable notice of the topics upon which its corporate representative can expect to testify, this court cannot determine whether the topics request testimony that is redundant of information expressed in the documents or, otherwise, would require expert testimony.

LRMC next argues that the Sheltons have not pleaded any claims relating to the audit trail or timing of when entries were made. *See **In re USAA Gen. Indem. Co.***, 624 S.W.3d 782, 791 (Tex. 2021) (orig. proceeding). However, the Sheltons' notice concerns audit trails, which LRMC already produced. Whether the documents comprising the audit trails are discoverable is not at issue before this court. Accordingly, we cannot conclude, without more, that the deposition topic related to documents LRMC already produced in discovery exceeds the bounds of the claim at issue.

Lastly, LRMC argues that the portion of the topics related to the "location and retrieval" of the audit trail invades its work-product privilege. As before, there is no indication in the record that any of LRMC's attorneys or other applicable representative would be the designated corporate representative on the topic of the "location and retrieval" of the audit trails. *See* TEX. R. CIV. P. 192.5(a). There further is no indication that the discovery sought matters related to how LRMC conducted the process of litigation, as opposed to its research on the facts underlying the case. *See **In re Exxon Corp.***, 208 S.W.3d at 76. And LRMC does not elaborate as to how the location or methods utilized to retrieve the audit trails constitutes work product. *See* TEX. R. CIV. P. 192.5(a). Accordingly, we again conclude that the facts of the instant case are distinguishable from those in ***In re Exxon Corp.*** and to the extent questions on this topic seek to delve into issues of LRMC's work product or attorney-client communications, such questions are improper and subject to an instruction by LRMC's counsel not to answer. *Cf. **In re USAA Gen. Indem. Co.***, 624 S.W.3d at 794.

*LRMC's supervision of Nurse Sabrina Giles from May 2019 to January 2020*

LRMC first argues that it is unclear what the topic seeks with the term "supervision," which it describes as "vague, ambiguous, overbroad, unduly burdensome, lacking specificity, and not described with reasonable particularity." *See* TEX. R. CIV. P. 199.2(b)(1). We disagree. The record reflects that Giles was employed as a nurse by LRMC and attended to Stephanie during the period of her labor and delivery. In an employment context, to "supervise" means to "direct and inspect [or superintend] the performance of" the employee's performance of her job duties. *See Supervise*, THE AMERICAN HERITAGE DICTIONARY (2nd College ed. 1982); *see also **Nederlandsch-Amerikaansche - Stoomvaart - Maatschappij; Holland-Am. Line v. Vassallo***, 365 S.W.2d 650, 656 (Tex. Civ. App.–Houston 1963, writ ref'd n.r.e.) ("common meaning of 'supervise' is 'to superintend,' . . . [which means] 'To have charge and direction of; to direct the course and oversee the details; to regulate with authority; to manage; to have or exercise the charge and oversight of; to oversee with the power of direction; to take care of with authority; to oversee; to overlook'") (citing ***Burrell Eng'g & Constr. Co. v. Grisier***, 240 S.W. 899, 900 (Tex. 1922)). We conclude that the word "supervision" describes the topic on which LRMC's corporate representative can expect to testify with reasonable particularity. *See* TEX. R. CIV. P. 199.2(b)(1).

LRMC further argues that the overbreadth is exacerbated by a lengthy, nine-month time frame. Specifically, it contends that the supervision of Giles months after[10] the labor and delivery is improper, beyond the scope of discovery, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. In response, the Sheltons argue that a corporate representative's testimony regarding LRMC's supervision of Giles is crucial to establish its recently-pleaded claim for negligent supervision. *See, e.g.*, ***Mackey v. U.P. Enters.***, 935 S.W.2d 446, 4459 (Tex. App.–Tyler 1996, no writ) (employer has legal duty to use ordinary care in adequately supervising its employees). They note that Giles testified[11] that she had a prior felony

---

[10] LRMC makes no argument that the nearly six-months of the topic's timeframe preceding Stephanie's admission as a patient to LRMC lends to its overbreadth and, thus, we do not consider it in conjunction with our analysis.

[11] LRMC contends that because the Sheltons already have procured both Giles's and her supervising charge nurse's testimony, any testimony from a corporate representative would be cumulative. Once again, LRMC failed to cite to this court where in the thousands of pages of record it may confirm the existence of this purportedly cumulative and duplicative testimony. *See **White Oak Bend Mun. Util. Dist. v. Robertson***, No. 14-00-00155-CV, 2002 WL 245957, at *5 (Tex. App.–Houston [14th Dist.] Feb. 21, 2002, pet. denied) (op.). Furthermore, it is axiomatic that in larger organizations like LRMC, an employee likely is supervised by a chain of command with numerous links in that chain. And it is reasonable to conclude that a corporate representative is in the best position to explain that *chain of*

16

conviction for illegal distribution of methamphetamine in Wood County, Texas, which required that she receive permission to sit for her nursing-board examinations, and which resulted in her having stipulations with which she had to comply during the first two years of her nursing career. They further point out that Giles refused to answer, on confidentiality grounds, whether she had any pending complaints filed against her by the Texas Board of Nursing at the time of her deposition. Lastly, we reviewed a portion of Giles's deposition testimony, which is subject to the parties' agreed motion for protection and labeled "confidential." Without disclosing the substance of that testimony, it concerns the latter period of her employment by LRMC and relates to matters leading up to the end of her employment with LRMC in January 2020. Based on our review of this testimony, we conclude that it suggests the existence of a pattern of behavior including but not necessarily limited to the relatively short time-period between September 2019 and January 2020, related to LRMC's supervision of Giles which is likely to lead to the discovery of admissible evidence. ***In re Nat'l Lloyds Ins. Co.***, 507 S.W.3d at 223.

### *Summation*

We carefully reviewed the record in light of the deposition topics at issue, in light of LRMC's arguments, consideration of the likelihood that the noticed-topics will lead to the discovery of admissible evidence, and the proportionality of the burden on LRMC's producing the information sought compared to the Sheltons' need for the information. Having done so, and based on the foregoing, we hold that Respondent did not abuse his discretion in denying LRMC's motion to quash and motion for protection as to Topic 7—relating to LRMC's supervision of Giles while she was working for LRMC between May 2019 to January 2020—and Topic 8—relating to the search protocol utilized to collect relevant documents requested for the discovery responses filed by Longview Regional Medical Center in this case.

However, based on our analysis above, we further hold that Respondent abused his discretion in denying LRMC's motion to quash and motion for protection with regard to Topics 3 and 4, related to "interpretation" of audit trails pertaining to Stephanie and R.S. In the context of the notice, the term "interpretation," though not vague or unclear in and of itself, as used in the notice with reference to the entirety of the audit trail, is too broad and vague to give LRMC "reasonable notice" of the topics upon which its corporate representative can expect to testify.

---

supervision. *See **Nederlandsch-Amerikaansche - Stoomvaart - Maatschappij; Holland-Am. Line v. Vassallo***, 365 S.W.2d 650, 656 (Tex. Civ. App.–Houston 1963, writ ref'd n.r.e.).

17

Apart from the overbreadth of the term "interpretation," as used in Notices 3 and 4, Respondent's denial of LRMC's motion to quash and motion for protection did not amount to an abuse of discretion on these topics.

Lastly, we hold that, as to Respondent's abuse of discretion regarding Topics 3 and 4, LRMC does not have an adequate remedy by appeal. *See **In re Weekley Homes, L.P.**,* 295 S.W.3d at 322 (mandamus relief available when trial court compels production beyond the permissible bounds of discovery); *see also **In re CSX Corp.**,* 124 S.W.3d at 153.

## CONCLUSION

Having held that Respondent abused his discretion by denying LRMC's motion to compel, by granting the Sheltons' motion for protection, and by ordering discovery only as to redacted version of the settlement agreement, Rule 11 agreement, and the draft settlement agreement and, further, that LRMC does not have an adequate remedy by appeal, we ***conditionally grant*** mandamus relief. We trust that Respondent will promptly vacate his order of February 27, 2024, denying LRMC's motion to compel and order of January 29, 2024, granting the Sheltons' motion for protection, and enter an order that, in addition to the discovery of settlement documents granted by letter-orders of February 21, 2024, and February 28, 2024, LRMC is entitled to discover all portions of the settlement agreement and draft agreement, as well as other admissible evidence related to settlement negotiations specifically sought by LRMC's Request No. 11. The writ will issue only if Respondent fails to comply with this court's opinion and order ***within ten days***. Respondent shall furnish this court, within the time for compliance with this court's opinion and order, a certified copy of its order evidencing such compliance.

Moreover, having held that Respondent abused his discretion by denying LRMC's motion to quash and motion for protection with regard to Topics 3 and 4 because of the overbreadth of the term "interpretation," as used, and, further, that LRMC does not have an adequate remedy by appeal, we ***conditionally grant*** mandamus relief. We trust that Respondent will promptly vacate his order of January 4, 2024, denying LRMC's motion to quash and motion for protection as to Topics 3 and 4 only, and enter an order that sets forth the scope of discovery with regard to Topics 3 and 4 in a manner which gives LRMC "reasonable notice" of the topics upon which its corporate representative can expect to testify with regard to the audit trails referenced in the notice. The writ will issue only if Respondent fails to comply with this court's opinion and order ***within ten days***.

Respondent shall furnish this court, within the time for compliance with this court's opinion and order, a certified copy of its order evidencing such compliance.

Finally, having held that Respondent did not abuse his discretion by denying LRMC's motion to quash and motion for protection based on its remaining objections to Topics 3 and 4, as well as to Topics 7 and 8, we ***deny*** the remaining, requested, mandamus relief.

**BRIAN HOYLE**
Justice

Opinion delivered July 10, 2024.
*Panel consisted of Worthen, C.J. and Hoyle, J.,*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# ORDER

**JULY 10, 2024**

**NO. 12-24-00068-CV**

**LONGVIEW MEDICAL CENTER, L.P. D/B/A LONGVIEW REGIONAL MEDICAL CENTER,**
Relator
V.

**HON. JUDGE VINCENT DULWEBER,**
Respondent

---

### ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by Longview Medical Center, L.P. d/b/a Longview Regional Medical Center (LRMC); who is the Relator in appellate cause number 12-24-00068-CV and the Defendant in trial court cause number 2021-1734-CCL2, pending on the docket of the County Court at Law No. 2 of Gregg County, Texas. Said petition for writ of mandamus having been filed herein on April 1, 2024, and the same having been duly considered, the petition for writ of mandamus be, and the same is, ***conditionally granted in part***.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate (1) his order of February 27, 2024, denying LRMC's motion to compel and order of January 29, 2024, granting the Real Parties in Interests' motion for protection, and enter an order that, in

addition to the discovery of settlement documents granted by letter-orders of February 21, 2024, and February 28, 2024, LRMC is entitled to discover all portions of the settlement agreement and draft agreement, as well as other admissible evidence related to settlement negotiations specifically sought by LRMC's Request for Production No. 11; and (2) his order of January 4, 2024, denying LRMC's motion to quash and motion for protection as to Topics 3 and 4 only, and enter an order that sets forth the scope of discovery with regard to Topics 3 and 4 in a manner which gives LRMC "reasonable notice" of the topics upon which its corporate representative can expect to testify with regard to the audit trails referenced in the notice consistent with this court's opinion; the writ will not issue unless the HONORABLE VINCENT DULWEBER fails to comply with this Court's order within ten (10) days from the date of this order. The petition for writ of mandamus is ***denied in all other respects***.

*Panel consisted of Worthen, C.J., and Hoyle, J.*